## STRAW v. TEMPLE et al.

No. 2858.   Decided July 10, 1916 (159 Pac. 44).

1. CONTRACTS—ADMISSIBILITY OF EVIDENCE—OTHER CONTRACTS. Where defendants, railroad subcontractors, claimed that the terms of certain written contracts were incorporated into an oral agreement under which plaintiff did certain work for them, and there was evidence supporting the claim, *held* that the written contracts were admissible, although the plaintiff was not a party to them.   (Page 261.)

2. CONTRACTS—ADMISSIBILITY OF EVIDENCE—OTHER CONTRACTS. Where plaintiff sued on a contract for constructing a portion of a roadbed which concededly lay between portions covered by other contracts, the defendants could locate the portion involved by showing the boundaries named in the other contracts.   (Page 263.)

3. CONTRACTS—BREACH—ADMISSIBILITY OF EVIDENCE. Where plaintiff sued defendants, railroad subcontractors, for excavating work done under a contract between them it is immaterial that the railroad company allowed pay for a less amount of excavation than plaintiff claimed to have done.   (Page 265.)

4. CONTRACTS—CONSIDERATION—PERFORMANCE OF CONTRACTUAL OBLIGATION. Where conditions arise not contemplated under an excavation contract, a promise of extra pay is supported by promise to continue the work. . (Page 267.)

5. CONTRACTS—CONSIDERATION—PERFORMANCE OF CONTRACTUAL OBLIGATION—WHAT CONSTITUTES. Where a railroad excavation contract provided that the sides of a cut be left vertical, but caving of the banks required the removal of additional dirt, *held* that the additional work was not contemplated in the original contract, and therefore furnished consideration for a promise of extra pay.   (Page 267.)

6. CONTRACTS—PLEADING—ALLEGATION OF NEW PROMISE. The extra pay agreement constituted a separate cause of action which should have been pleaded in the complaint.   (Page 268.)

7. PLEADING—REPLY—ADDITIONAL CAUSE OF ACTION. Plaintiffs could not enlarge the complaint by alleging the extra pay agreement in their reply.   (Page 268.)

8. PLEADING—LEAVE OF COURT—CONFORMITY TO PROOF. If evidence is received without objection upon a claim which should have been pleaded, the complaint may thereafter, by leave of the court, be amended to conform to the proof.   (Page 268.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Action by G. W. Straw against Sarah Temple, T. P. Vosburg, and L. Carlson, copartners doing business under the firm name of Temple, Vosburg & Co.

Judgment for plaintiff. Defendants appeal.

REVERSED and remanded.

*Cheney, Jensen & Holman,* for appellants.

*S. A. King,* for respondent.

FRICK, J.

The plaintiff commenced this action to recover an alleged balance due him from the defendants upon an oral subcontract, wherein plaintiff agreed to and did perform certain work for the defendants. The plaintiff, as a first cause of action, alleged that on the 26th day of October, 1913, he and the defendants entered into an oral contract—

"whereby this plaintiff agreed to construct that portion of the roadbed of said Salt Lake & Utah Railroad Company lying between stations 277 and 282 in mile 26, according to the engineer's survey of the Salt Lake and Utah Railroad Company, and to complete and make ready the said grade or roadbed for the laying of track thereon; and said Vosburg and Carlson, in consideration of the work so to be performed and completed by said plaintiff, agreed to pay to plaintiff at the time of the completion of said work, the sum of forty cents ($.40) per cubic yard, for all loose dry material removed in the execution of said work, and, if in the prosecution of said work the plaintiff should encounter wet material, then and in that event he was to prosecute said work to completion upon what is known as a force account, that is to say, the said plaintiff was to be paid at the rate of five dollars ($5) per day for each man and team, plus ten per cent for wear and tear on the tools and equipment and $2.50 for each laborer doing common labor; in other words, the plaintiff was to be paid at the rate

of $5.50 per day for each man and team and $2.50 as afore-
said, for each laborer doing common labor, the plaintiff to
furnish, while doing work under the force account, supplies
and food for his horses and men at his own cost and expense."

Plaintiff further alleged that he commenced work on the
date aforesaid and completed the work on the 10th day of
December, 1913; that in completing said work he removed
10,516.5 cubic yards of dry material, and that, in addition
thereto, he removed a certain quantity of wet material; that
for the removal of dry material he, under the terms of the
contract, was entitled to the sum of $4,206.60, and for the
removal of the wet material the further sum of $1,914.00
"plus ten per cent"; that there was a balance due him at
the commencement of the action, upon the contract aforesaid,
amounting to the sum of $4,698.20. As a second cause of
action plaintiff alleged the defendants owed him a balance of
$141.30 for the use of his teams, etc. The defendants an-
swered the complaint, and, in answer to the first cause of
action, after admitting that they had entered into a contract
with the plaintiff to do certain excavation work, they set forth
the terms and conditions of that contract in the following
words:

"That the terms, conditions and stipulations of the con-
tracts between the Inter-Urban Construction Company and
the Reynolds-Ely Construction Company and the Reynolds-
Ely Construction Company and these defendants covering
the said work (the said two contracts being identical as to
terms except as to price per cubic yard and amount), all of
which terms, conditions and stipulations plaintiff knew and
understood, were adopted and made a part of the said agree-
ment entered into between these defendants and plaintiff
herein, except that these defendants were to pay plaintiff the
sum of 40 cents per cubic yard for material removed in the
course of said work, and that said work so undertaken by
plaintiff was to be completed by November 15, 1913."

Defendants denied that plaintiff had removed the amount of
dry material claimed by him, and averred that he had removed
only 5,140.1 cubic yards of dry material, and further averred
that he had removed no wet material at all as defined by the

terms and specifications of the contract. Defendants admitted that there was a balance due upon the first cause of action amounting to $208.80 and no more. They also admitted that there was a balance due on the second cause of action amounting to $17.80 and no more. The defendants also set up a counterclaim against the plaintiff for damages, but that is not material here.

The defendants were subcontractors under the contractors' names in their answer and they in turn sublet the work in question here to the plaintiff. A trial to a jury resulted in a verdict for the plaintiff in the sum of $1,135.78 on the first cause of action, and nothing on the second cause of action. Judgment was entered in accordance with the verdict, and the defendants appeal.

While defendants' counsel have assigned a large number of errors, yet in their brief they have grouped them all under a few heads. We shall consider only those assignments which are deemed material.

The assignments we shall consider first relate to alleged errors in the admission of evidence. In considering these alleged errors we shall not refer to the many questions, rulings, and exceptions, since the several rulings must all be controlled by one general principle. It will be observed that the plaintiff declared upon an oral contract, wherein he alleged that he had agreed to construct a certain portion of a certain railroad ''grade or roadbed,'' and that in doing that work he was to receive forty cents for every cubic yard of ''loose dry material'' removed by him and a fixed per diem for removing wet material, etc. No specific terms or conditions of the contract are pleaded. The defendants in their answer, however, specifically set forth that ''the terms, conditions, and stipulations'' of the oral contract were to be the same as those mentioned in certain contracts to which special reference was made. In other words, ''the terms, conditions, and stipulations'' that were contained in the contracts referred to, the defendants claimed, were in fact adopted by the plaintiff and the defendants as part of the oral contract sued on. At the trial plaintiff testified in general terms what, according to his version of the oral contract, was due him

from the defendants thereunder, both for removing dry material and what he contended constituted wet material. It is, however, insisted that, under the terms and stipulations of the contracts referred to in their answer, plaintiff did not remove any material which fell within what is denominated "wet material" under those contracts, and hence was not entitled to the amount claimed by him upon that score, or to any amount. For the purpose of proving their claim in that regard counsel for defendants, in various ways, attempted to introduce the contracts and specifications pleaded in their answer. Plaintiff's counsel, however, objected to the proffered evidence upon the ground that the contracts referred to were between other parties, and hence were "immaterial and irrelevant." The court, it seems, adopted the view of plaintiff's counsel and excluded the proffered evidence in whatever form it was offered. Some idea of the theory upon which the district judge excluded the proffered evidence can best be gleaned from what is said in ruling upon the question. He said:

"Now, this offer which is now made of certain matters in the document marked for identification as 'Defendants' Exhibit 16,' in the first place, could not bind the plaintiff in this case, because it could not be considered as an admission. There is an entirely different privy between the parties to this document and the parties in this action, and then the record further discloses that this witness did not read this contract and does not know what it contains. The objection is sustained."

From what he did say it is quite clear that the ruling is erroneous according to the most elementary principles of law. Quite true plaintiff could not be bound by the terms and conditions of contracts made between others with whom he was not in privity, but the defendants by their offer did not seek to so bind him. All they attempted to do was to establish the terms of plaintiff's own contract as the defendants claimed them to be, and thus bind him by those terms if the jury should find them to be as contended by the defendants. In order to so bind the plaintiff, the defendants were required to prove at least two things: (1) What the terms, condi-

tions, and stipulations of the contract they referred to in their answer were; and (2) that the plaintiff and the defendants had adopted such terms, conditions, and stipulations as part of the paról contract sued on. To show the first was as necessary as it was to prove the second, and it would be utterly useless to prove one unless the other was also proved. The evidence shows that the plaintiff had said, when the contract in question was entered into:

"You needn't explain to me those conditions. I bid on this work and I understand what they are."

That evidence was, however, without effect as long as the defendants were not permitted to show what the terms and conditions of the contracts were to which they had referred in their answer and which, they contended, were adopted by the plaintiff and the defendants. The court, therefore, committed manifest error in excluding the defendants' proffered evidence by which they sought to prove the terms, conditions, and stipulations of the contracts referred to in the answer.

It is next contended that the court erred in sustaining plaintiff's objections to the defendants' attempts, by various questions propounded to their witnesses, to prove the precise limits of plaintiff's contract. The plaintiff had testified that nothing was said, either by the defendants or by himself, concerning the limits of his contract, but that he was to remove the earth between certain stations as fixed by the railroad engineer. It appeared at the trial that the firm of Sumpsion & Straw, a copartnership of which the plaintiff was the junior member, had contracts for excavating the earth on both ends of the portion of the excavating to be done by the plaintiff under the contract in question. That is, plaintiff's work, under his contract, was between the work done under two of the contracts of the firm aforesaid. The south end of plaintiff's contract thus was coterminous with the north end of said firm's contract lying to the south, and the north end was coterminous with the south end of said firm's contract lying to the north of plaintiff's contract. The plaintiff also testified that he had excavated longitudinally for a distance of 218.6 feet, and also removed some material beyond those

limits; that he had removed 10,516.5 cubic yards of dry material, and in addition thereto a large amount of wet material. The defendants denied all that, and attempted to show that plaintiff's contract did not extend a distance of 218.6 feet as claimed by him, but that his contract extended only over a space of 176 feet, and that he was entitled to pay for the removal of only 5,140.1 cubic yards instead of 10,516.5, as claimed by him. As before pointed out, the firm of Sumpsion & Straw had the adjoining contracts to the north and south of plaintiff's contract. Defendants' counsel, therefore, attempted to prove just where the north and south end lines of those two contracts were. Plaintiff's counsel objected, however, that such fact was "immaterial and irrelevant," since plaintiff was neither bound by those contracts, nor concerned in what they contained. Under different circumstances counsel's objection might have been proper, but such would not be the case under all possible circumstances. For example, if A. and B. have a controversy concerning A.'s boundary line, it ordinarily would not be either material or relevant to prove where the boundary lines of C. and D. were located, although such lines might be adjacent to those of A. If, however, either A. or B. should contend that A.'s boundary lines were coterminous with C.'s and D.'s lines, then it might be very material to show just where the latter boundary lines were located, for the very good reason that if the boundary lines between A., C., and D. were coterminous, then to establish C.'s and D.'s lines would also establish A.'s line. If A.'s boundary line were marked on the ground, then such marked line would control. The evidence of all parties, including the plaintiff however, is to the effect that the boundary lines of plaintiff's contract were not marked on the ground, and nothing was said with respect to where they were located, except to name the stations within which he was to operate. As we have seen, it was also conceded on all sides that plaintiff's contract extended to the two contracts lying on either end of his contract. It is manifest, therefore, that it was both material and relevant for the defendants to prove just where the limits of plaintiff's contract were. One way to do that was to prove where the boundary lines of the original contracts referred to

in defendants' answer were.  That is just what defendants sought to prove by the proffered evidence.  The court, however, in effect ruled that although they might establish, if they could, where the boundary lines of plaintiff's contract were, yet they could not do that by proving where the boundary lines of the adjoining contracts were.  Moreover, the defendants contended that the plaintiff was claiming pay for material which had been removed on the two adjoining partnership contracts, and that if he were only allowed for the 176 feet, which was the length of his contract, he had only removed the number of cubic yards claimed·by them.  Of course, the jury were not bound to believe defendants' evidence upon that subject, but defendants had a clear legal right to present to the jury what they claimed were the facts in that regard. Counsel for plaintiff, in answer to defendants' contention upon this question, say:

"The exclusion of this evidence did not. prevent defendants, however, from proving their theory of the contract and of the yardage involved."

That is quite true, but defendants had the right to establish those facts by any competent and material evidence at their command.  That right was denied them.  We cannot say what conclusion the jury might have reached if the excluded evidence had been admitted.  We think, therefore, that the trial court was clearly in error in excluding defendants' proffered evidence, and that the error was prejudicial to the substantial rights of the defendants.

We remark that in that connection defendants' counsel offered some evidence to the effect that the railroad company had only allowed pay for certain amounts of material that had been removed.  The court's rulings upon those questions were correct.  It was not material nor relevant what the railroad company had allowed.  Plaintiff, as between him and the defendants, would not be bound by that, but he would be limited to what he had a right to remove under his contract, and by the amount he in fact did remove under it, and not by what the company had allowed.

It is next insisted that the court erred in permitting the plaintiff to recover for removing wet material which it is

contended, under the terms and stipulations of the contracts referred to in defendants' answer and which we have already discussed, did not constitute wet material for which plaintiff was entitled to recover the special rates claimed by him. Of course, in that regard the terms of the contracts which we have ruled the court erred in excluding would control in the event the jury found that those terms were adopted and made a part of the contract sued on by the plaintiff. That the defendants had the right to show what those conditions were we have already determined, and therefore we need not pursue this subject further.

The next assignment arises as follows: At the trial the plaintiff claimed that he was entitled to a large sum, to wit, $1,500, for having removed material not contemplated under his original contract entered into with the defendants. In the original contracts made by the railroad company the sides or banks of the cut plaintiff was to excavate under his contract were to be made or left vertical. He, however, insisted that in doing the work the banks "sloughed" to such an extent that it was necessary for him to remove a large amount of material not originally contemplated; that he saw the defendants about it, and that it was agreed between him and the defendants that he should receive pay as though he had in fact constructed the sides of the cut to a "one to one slope," which would be at an angle of forty-five degrees; that while he did not in fact make such a slope, yet the cut should be measured as though he had constructed the sides in that way. The defendants denied plaintiff's contention, and insisted that he was to receive pay only for vertical sides. Ordinarily the question whether plaintiff's contention should prevail or not would, as a matter of course, be one for the jury. Defendants' counsel, however, insist that the court erred in submitting that question to the jury for the reasons: (1) That there was no consideration for the alleged agreement to pay for a one to one slope; and (2) that no such an agreement was pleaded, and hence no issue of that character was presented.

The first proposition raised by counsel, under the authorities is not free from either difficulty or doubt. Of course if the making of a one to one slope, either directly or by implica-

tion, was a part of the original contract with the railroad company and the terms of that contract were **4, 5** adopted and made a part of plaintiff's subcontract as contended by the defendants, then the plaintiff was already bound to make such a slope, and it is elementary that a promise to pay a person for what he by the terms of his contract is already bound to do is without consideration, and therefore unenforceable either in law or equity. See 1 Page on Contracts, Section 312; 9 Cyc. 349, 350, where the doctrine is clearly stated and the cases are collated. There are, however, exceptions to the general rule just stated. While the decisions are quite harmonious with regard to the general rule, they are in conflict with regard to when the exceptions apply or modify the general rule. See 1 Page on Contracts, supra, and 9 Cyc. 352, 353, where the cases upon the exceptions are referred to. Upon the other hand, while refusing to follow the cases which have adopted the rule respecting the exceptions, some of the courts have nevertheless assumed a middle ground. The rule adopted by the latter courts is well illustrated by the Supreme Court of Minnesota in the case of *King* v. *Duluth, M. & N. Ry. Co.*, 61 Minn. 482, 63 N. W. 1105, and cases there cited. In the course of the opinion the doctrine is well stated by Mr. Chief Justice Start in the following words:

"But where the party refusing to complete his contract does so by reason of some unforeseen and substantial difficulties in the performance of the contract, which were not known or anticipated by the parties when the contract was entered into, and which cast upon him an additional burden not contemplated by the parties, and the opposite party promises him extra pay or benefits if he will complete his contract, and he so promises, the promise to pay is supported by a valid consideration. In such a case the natural inference arising from the transaction, if unmodified by any equitable considerations, is rebutted, and the presumption arises that by the voluntary and mutual promises of the parties their respective rights and obligations under the original contract are waived, and those of the new or modified contract substituted for them. Cases of this character form an exception to the general rule that a promise to do that which a party is already legally bound to do is not a sufficient consideration to support a promise by the other party to the contract to give the former an additional compensation or benefit. 1 Whart. Cont., Section 500."

It is also pointed out in the course of the opinion that in applying the doctrine each case must be considered in the light of all the surrounding facts and circumstances and the objects and purposes the parties had in view in entering into the contract, and if it appears that the party claiming additional compensation is adready bound by the contract, or that the matter by implication of law must be held to have been within the contemplation of the parties, then the general rule should be enforced. In the original contract in this case it seems clear that the parties contemplated the sides of the excavation should be vertical and not sloping. Such, it seems, was also the contract between plaintiff and the defendants. The making of the sloping sides was therefore entirely outside of the terms of the contract, and it seems could not have been within the contemplation of the parties, either express or implied. This case, therefore, is not one where a party to a contract promises to pay the other party thereto an additional compensation for doing something which the promisee was already bound to do by the terms of the contract. That fact, therefore, takes this case out of the general rule.

With regard to the second proposition it will be remembered that the plaintiff claims, and we have held, that the removing of the material constituting the slopes was not included within his original contract. He also claimed at the trial that the agreement for extra compensation for making the slopes was entered into as a distinct agree-**6, 7, 8** ment and at some time after the original contract was entered into. Moreover, it appears that it was not a modification of the original contract merely, but that it was a new and independent agreement. As we have seen, plaintiff testified that he was entitled to $1,500 for removing the material in making the slopes. Plaintiff, however, said nothing about such an agreement or liability in his complaint. Nor did the defendants, either in their answer or counterclaim, refer to the matter in any way. But the plaintiff, in his reply, for the first time, referred to the one to one slope, but what was said in that connection, as a matter of pleading, constituted mere surplusage which the defendants had a right to disregard. Defendants' counsel, therefore, contend that

the court erred in submitting to the jury the question of plaintiff's right to recover for that claim. It seems to us the contention is well founded. The claim being based upon an independent promise or agreement, as it is, was just as much a separate and distinct cause of action as was the first cause of action under the contract declared on by the plaintiff or the second one for the use of the horses, wagons, etc. Neither could the plaintiff add anything to either of his causes of action in his reply. That is not the province of a reply. In this jurisdiction a reply can only be filed under the conditions pointed out by the statute, and in no event can a cause of action be either stated or enlarged in the reply. When, however, evidence is produced in support of a claim which ought to have been pleaded, and is received without objection, the party producing it may nevertheless obtain leave of court to amend his pleading to conform to the evidence and recover judgment accordingly. Where that is the case, the pleadings, after they are amended, support a judgment based upon the evidence and that is all that is necessary. Such a course was, however, not pursued in this case, and, in view of the pleadings as they stand, we think the court erred in submitting to the jury the question of whether plaintiff should recover for removing the material and making the slopes.

What we have said sufficiently covers all other assignments, including those relating to the instructions. All those assignments are covered by the same general principles we have discussed, and of course will not occur again. Moreover, the instructions were erroneous only because they were in harmony with the trial court's rulings upon the evidence which we have already passed on. All such errors will therefore necessarily be avoided upon a retrial of the case.

For the reasons stated herein, the judgment is reversed, and the case is remanded to the district court of Utah County, with directions to grant a new trial. It is further ordered that the court may make such orders with regard to amendments of the pleadings by either party as he may deem just and proper. Costs to appellants.

STRAUP, C. J., and McCARTY, J., concur.