## PETERSON v. SEVIER VALLEY CANAL CO.

No. 6360.   Decided September 3, 1941.   (116 P. 2d 578.)

See 49 C. J. Pleading, sec. 413; 21 R. C. L. 556 (Perm. Supp. p. 5072.

N. J. *Bates,* of Richfield, for appellant.

*Elias Hansen,* of Salt Lake City, and *Ferdinanad Erickson,* of Richfield, for respondent.

WOLFE, Justice.

Appeal from a judgment rendered on the pleadings in favor of defendant, on its motion. The motion tests out the question of whether plaintiff is entitled to judgment granted he can prevail in all the facts alleged in the complaint as supplemented by the reply.

The complaint alleged that defendant corporation maintains and operates an irrigation system in Sevier Valley, a portion of which system is a canal in which defendant has an undivided interest. The canal runs from a point south of Joseph, Utah, to a point north of Richfield. It further alleged that the Piute Reservoir and Irrigation Company operates an irrigation system in Sevier Valley for the distribution of water to its stockholders, and that the Piute Company also owns an undivided interest in the aforementioned canal. Plaintiff also alleged in his complaint that the Piute Company entered into a contract with defendant corporation giving defendant exclusive control and management of the canal and its turnout gates and agreeing as to the division of expenses in the upkeep of said canal, agreeing further, that there should be no additional charges against the Piute Company or its stockholders for turning out water. Plaintiff, as a stockholder of the Piute Company claimed to be entitled to have water diverted from said canal, and alleged that defendant wrongfully kept the turnout devices under lock and key for the purpose of controlling the canal and refused to turn water out except on payment to defendant of 15c per acre foot of water, which charge plaintiff was forced to pay in order to mature and save his crops. Recovery of the money thus paid under duress is sought by this complaint.

Defendant's answer admitted and pleaded the contract between itself and the Piute Company, referred to in plain-

tiff's complaint. It then alleged that the said contract refers only to the main canal described by plaintiff and in no way pertains to lateral canals leading from the turnout devices of that main canal; that for 20 years plaintiff and other stockholders of the Piute Company had paid from 15c to 50c per acre foot for the use of said laterals; that it contracted orally for the year 1940 with the Piute Company that stockholders of the latter company should pay 15c per acre foot of water for the privilege of coursing water through the laterals in 1940, (though it did not allege by what authority the Piute Company made this oral agreement in behalf of its stockholders). It further alleged that the charge demanded and obtained from plaintiff was for that purpose. Further, defendant denied that any sum was exacted for turning water out of the main canal, but admitted keeping the turnout devices under lock and key, with the consent of the Piute Company, and that it refused to allow the diversion of water from the main canal through the laterals except on payment of the required sum, alleging further that said sum was reasonable and an equitable charge for the use of said laterals and for defraying the expenses of their maintenance.

In his reply plaintiff admitted that water diverted from the main canal courses through laterals which defendant maintains. The reply also admitted that the sum exacted was claimed to be for the use of the laterals and as reimbursement for a reasonable proportion of the maintenance costs thereof. Plaintiff further alleged his willingness to pay a just and fair proportion of the maintenance costs of said laterals but averred that defendant refused to determine and inform him of such costs. He then alleged that the charges made in 1940 and for more than 20 years last past were unjust; that defendant's claim that the charges were for the use and maintenance of the laterals was sham and pretense and an excuse to coerce plaintiff to pay the required sum.

Section 104-11-1, R. S. U. 1933, outlines the situations in which a reply may be used in this state and the matter

which may be pleaded therein. It reads in part, as follows:

"There shall be no reply except: * * *

"(2) Where some matter is alleged in the answer to which plaintiff claims to have a defense by reason of the existence of some fact which avoids the matter alleged in the answer.

"When a reply must be filed, * * * it shall consist of:

"(a) A general or specific denial of each allegation or counterclaim controverted, * * * or,

"(b) Any new matter not inconsistent with the complaint, constituting a defense to the matter alleged in the answer; or the matter in the answer may be confessed, and any new matter alleged, not inconsistent with the complaint, which avoids the same."

When the complaint in this case is stripped to its pertinent allegations, it is apparent that the cause of action therein set out is based on the theory that money was obtained by defendant through duress by refusing to turn water out of the main canal until the required ▆▆ sum was paid. Defendant's answer denied that money was so obtained under duress, and alleged that the charge was for the use and maintenance of lateral canals. The reply then admitted that defendant claimed the charge was for the use of the laterals, but averred that defendant was only using sham and pretense to compel the payment of an unjust charge, as a condition to turning the water out of the main canal. The reply clearly comes within subsection (b) of the above-quoted statute in that it consists of matter constituting an admission, in part, of the allegations of the answer and sets out matter in defense of that part which is admitted. While admitting that a reasonable charge might have been collected for the use of the laterals, the reply still maintains that money was wrongfully obtained by defendant's use of duress. Such allegation is not inconsistent with the complaint because it continues the cause of action of the complaint, i. e., money paid under duress in order to obtain water to which plaintiff was entitled. The reply is not one which seeks to state or enlarge the cause of action, such as this court held to be improper in *Straw*

v. *Temple*, 48 Utah 258, 159 P. 44. Nor does it state "a different cause, on a different theory, on a different ground, and on a different contract" which caused the court to consider the reply a complete departure from the complaint in *Combined Metals* v. *Bastian*, 71 Utah 535, 267 P. 1020. This reply was a supplementation to the complaint in that it still seeks to recover money which plaintiff alleges he was compelled to pay before he could obtain water from the main canal. The effect of defendant's answer was to make a shift in the reason for refusing to deliver the water, as compared to the reason alleged in the complaint. While the reply conceded that defendant had claimed the reason to be as set out in its answer, it takes the position that the reason is only incidental to the principal fact that money was exacted by the use of duress. It is clear that throughout the complaint and reply, the over-arching cause of action remains the same, though the recovery sought in the complaint may be limited to the extent of the admissions in the reply. We conclude, therefore, that by his pleadings, plaintiff has presented a clear issue on the question of money paid under duress and that this cause of action should be tried on its merits.

The judgment is reversed and the case remanded for trial.

McDONOUGH, J., concurs.

MOFFAT, Chief Justice (concurring).

I concur in the prevailing opinion written by Mr. Justice Wolfe and also in the statement made by Mr. Justice Larson.

LARSON, Justice (concurring).

I concur. Plaintiff was not a stockholder in defendant company, and his water rights were independent of the rights of, or stock in, the defendant company. It had no contract with him whereby he agreed to pay in advance for the distribution of water to him, or for the use of canals

or laterals. He was liable to defendant for his proportionate share of the maintenance costs under Section 100-1-9, R. S. U. 1933. Since his water right was independent of the defendant, it had no right or power to withhold or distrain his water pending payment of such charges as it saw fit to make it. It should have permitted the water to flow to him and then collect his proper proportion of the costs of maintenance, control and operation.

PRATT, Justice (dissenting).

I dissent. The complaint is predicated upon a charge for the release of water, which water was to be released free of charge under and pursuant to a written contract between the two water companies involved. Plaintiff was compelled to pay to save his crops, as defendant had the release control under lock and key.

The reply, however, changes the picture entirely, in spite of the denials therein. Defendant answered that the charge was not for the release of the water, an expense incident to the terms of the written contract, but was for the use of a lateral owned by defendant, a charge in the nature of a share of the expense in the upkeep of the lateral. In his reply plaintiff alleges that this action was brought because the amount charged was far in excess of the fair and equitable proportion that should have been required for the upkeep of the lateral, that plaintiff (and his assignors) have always been ready and willing to pay a just proportion of that upkeep, but that defendant has been arbitrary in fixing the amount and will not account to plaintiff (and plaintiff's assignors) as to the correct amount.

The result: The terms of the written contract between the water companies are no longer material. The question now has become: Is the charge excessive, either under some contractual relationship between plaintiff (or his assignors) and defendant, or under section 100-1-7, R. S. U. 1933, which reads:

"When any person desires to convey water for irrigation or any other beneficial purpose and there is a canal or ditch already constructed that can be used or enlarged to convey the required quantity of water, such person shall have the right to use or enlarge such canal or ditch already constructed, by compensating the owner of the canal or ditch to be used or enlarged for the damage caused by such use or enlargement, and by paying an equitable proportion of the maintenance of the canal or ditch jointly used or enlarged; provided, that such enlargement shall be made between the 1st day of October and the 1st day of March, or at any other time that may be agreed upon with the owner of such canal or ditch. The additional water turned in shall bear its proportion of loss by evaporation and seepage."

The principles enunciated in the case of *Combined Metals, Inc., et al.* v. *Bastian et al.*, 71 Utah 535, 267 P. 1020, are applicable here.

The reply here is a complete departure from the complaint, and shows clearly that the controversy is not as alleged in the complaint, but is something else. A judgment could not be rendered upon the complaint in favor of plaintiff without making findings of fact wholly without the issues raised by that complaint. There is nothing in the complaint about an excessive charge either under a contract or under statute. The lower court was not in error.