## THOMSON v. REYNOLDS et al.

No. 2763.   Decided June 10, 1918.   (174 Pac. 164.)

1. EVIDENCE—SELF-SERVING DECLARATIONS—PLEADING.   Complaint in another pending action was competent to show that such action was pending, but not to prove the truth of allegations therein, being self-serving declarations, especially where denied in the answer. (Page 441.)

2. TRUSTS—RESULTING TRUST—CONVEYANCE OF LAND.   A purchaser of land from a husband takes subject to a resulting trust in favor of wife, where he has knowledge thereof.   (Page 441.)

3. FORCIBLE ENTRY AND DETAINER—JUDGMENT.   A decree quieting title cannot be entered in an unlawful detainer action, although defendant alleges title in a third person, who is allowed to appear with consent of all parties and submit proof, and although the action is tried, as an equitable action, because a decree must be supported by the pleadings, or at least by the record.[1]   (Page 443.)

4. APPEAL AND ERROR—DISPOSAL OF CAUSE—REVERSAL.   An appellant will not be given affirmative relief on the record, where respondent, in reliance on court's ruling in excluding evidence, waived cross-examination, but the case will be reversed and remanded, since otherwise respondent would be denied his day in court.   (Page 443.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. C. W. Morse,* Judge.

Action by Matthew McB. Thomson against Charles Reynolds and Mary Atkinson.

Judgment for plaintiff.   Defendants appeal.

---

[1] *Welling* v. *Abbott,* 52 Utah, 240, 173 Pac. 245; *Rosenthyne* v. *Matthews-McCulloch Co.,* 51 Utah, 38, 168 Pac. 957.

REVERSED and remanded.

*C. E. Norton* for appellants.

*C. E. Marks* for respondent.

FRICK, C. J.

It would be futile to attempt to pass upon the merits of the case on this appeal. We shall therefore refer to the record only for the purpose of showing why the case legally cannot, and, as a matter of justice to all the interested parties, should not, be determined on the merits by this court.

The action originated in the justice court between Matthew McB. Thomson as plaintiff and Charles Reynolds as defendant, as an action of unlawful detainer, under Comp. Laws 1907, section 3575. The complaint was filed and summons issued pursuant to the provisions of section 3580, and the allegations of the complaint are the usual ones in such actions. The plaintiff prayed judgment for restitution of the premises and for damages, etc. The defendant filed an answer, in which he denied that the plaintiff was the owner of the premises; denied that the plaintiff demanded possession thereof; denied that defendant had refused to surrender possession of the premises; denied that he was in default of the payment of the rent as alleged in the complaint; and, as an alleged affirmative defense, averred that at all times mentioned in the complaint one Mary Atkinson was the owner of the demanded premises, and was in the quiet and peaceable possession thereof, and that, for the reasons just stated, Mary Atkinson was a necessary party to the action. Defendant further averred that at the commencement of this action another action was pending between the plaintiff and said Mary Atkinson in the district court of Salt Lake County "for the same cause of action as that in the complaint herein stated and alleged"; that the court was without jurisdiction for the reason that the title to the premises was involved. The answer ended with the following prayer: "Wherefore this defendant prays that said Mary Atkinson be made a party defend-

ant herein, and that this defendant go hence without day, with his costs and disbursements herein expended.''

After the answer was filed Mary Atkinson filed what is called a ''Petition in Intervention,'' in which she asked that she be made a party to the action. The justice did not act upon said petition, but made the following order: ''It is hereby ordered that this cause be transferred to the district court of Salt Lake County, state of Utah.'' The case was accordingly certified to the district court of Salt Lake County.

No order permitting Mary Atkinson to file an answer was ever made by the justice court, nor did she ever file an answer in that or in any other court. At the trial the district court, however, recognized her as a party, and permitted her to defend under the answer filed by the defendant Reynolds, the substance of which we have before stated. The complaint and the answer aforesaid are the only pleadings that were ever filed in the case by any one.

The case was heard on those pleadings, and the district court made findings of fact, conclusions of law, and entered judgment in favor of the plaintiff quieting title to the premises in him, from which judgment Mary Atkinson appeals, and she will be hereinafter designated as appellant.

The assignments of error filed in this court when the case was first appealed are as follows:

''(1) The court erred in overruling the demurrer to the complaint; (2) the decision is against law; (3) the decision is contrary to the evidence; (4) the evidence is insufficient to justify the decision.''

The only question argued by appellant's counsel in his original brief was that the premises constituted the homestead of the appellant and her husband, and that, under the provisions of Comp. Laws 1907, section 1207, she could not be removed from said homestead against her will. Counsel for respondent in his brief insisted that appellant's assignments of error were insufficient, and that by arguing only the one question before stated he had waived all other assignments of error, and hence the only matter that counsel for respondent argued was the question of appellant's rights under section 1207 aforesaid. Respondent's counsel further contended that

the premises in question never had been the homestead of the appellant and her husband. The district court also took that view.

The case was submitted to this court upon the propositions just outlined. The members who then constituted this court being unable to agree, a reargument of the case was ordered, which was duly had. On the second argument the writer called the attention of appellant's counsel to the character of his assignments and to the limited claims presented by him in his original brief. Counsel who had represented respondent at the trial and at the original hearing in this court had died before the second argument took place. Appellant's counsel then asked leave of this court to prepare and file additional assignments of error and in connection therewith to prepare and file a supplemental brief. Leave was granted, but counsel never did file additional assignments of error as required by rule 26 of this court. He, however, filed what he called "Amended Assignments of Error and Brief" in the form of a printed supplemental brief in which the additional assignments of error were printed. The so-called amended assignments of error are as follows:

"(1) The district court did not have jurisdiction of the appellant nor of the subject-matter of the action; (2) the complaint does not state facts sufficient to constitute a cause of action against appellant; (3) the decision is against law; (4) the judgment is contrary to the pleadings and the evidence."

In the supplemental brief filed counsel argued four propositions: (1) That the district court was without jurisdiction; (2) that the complaint is insufficient in substance; (3) that the district court's decision is "against law"; and (4) that "the judgment is contrary to the pleadings and evidence."

The case was again submitted on all of the assignments of error and arguments, and again no conclusion was reached by this court as then constituted. Thereafter the membership of this court was increased from three to five. At the last term the case was again argued to the five members upon the assignments and briefs before stated.

The foregoing, though brief, correctly reflects appellant's contentions in this court.

Let us now, for a moment, refer to the evidence produced and the proceedings had at the trial. As before stated, the district court, by consent of counsel, permitted the appellant to present her case upon the answer filed by the defendant Reynolds. In support of her claim of owner-   1, 2 ship of the premises in question she testified that while .she lived in Bridgeport, Conn., and in Paterson, N. J., she had earned considerable sums of money, which was kept in a bank; that when her husband came west to Utah she gave him $1,600 to buy a home. Counsel for respondent objected to this evidence on various grounds, and the court intimated that the objection was good. Counsel for appellant, apparently conceding the objection to be good, suggested that he would thereafter prove the necessary facts to make the testimony of appellant proper as against the plaintiff, and the court permitted the testimony to remain in the record for the present to permit counsel to redeem his promise. Counsel for respondent then asked permission from the court to postpone cross-examination of appellant until such time as her counsel should show her testimony relevant and material as against the plaintiff, and the court granted the request of respondent's counsel. At the conclusion of appellant's case counsel for respondent insisted that appellant's counsel had failed to make his client's testimony respecting the advancement of money to her husband material as against the plaintiff, and then moved that all her testimony upon that subject be stricken from the record. The district court granted the motion, and eliminated all of appellant's testimony respecting the advancement of money to her husband, for the purpose she had stated, from the record. Appellant's counsel had, however, introduced in evidence appellant's complaint in the action which the defendant Reynolds in his answer had averred was pending. In that complaint the facts respecting the advancement of money by appellant to her husband were stated in accordance with her testimony which had been stricken. When the court came to consider the purpose and effect of the statements contained in appellant's complaint

which she filed in the alleged pending action, the court, addressing her counsel, said, "I take it those files are introduced in support of the allegation in your complaint there is another action pending between the parties." The court doubtless referred to the answer instead of the complaint, because no such allegation was contained in any complaint. Her counsel, to the court's question, answered, "Yes." The court then said, "Do I understand that has been finally determined," referring to the action. Appellant's counsel again answered, "It has not." The record thus shows that all of the testimony of appellant respecting the advancement of money to her husband was stricken from the record, and that the statements to the same effect in her complaint in the action which was alleged to be pending was not considered by the court, except to support the allegation in the answer in this case that another action was pending. The complaint was competent for that purpose, but was wholly incompetent for the purpose of proving that appellant had advanced money to her husband. That statement was merely a self-serving declaration, and was, for that reason if for no other, wholly incompetent to prove the fact alleged. That is not all, however. Appellant's husband had filed an answer to her complaint in the alleged pending action in which he had denied that she had advanced him any funds for the purpose claimed by her or at all. The statements, therefore, in appellant's complaint in the pending action were denied, and, quite apart from the fact that her self-serving declarations were in evidence against the plaintiff, the denial of her statements by her husband in his answer left her statements without force or effect until established by competent evidence. There is therefore not a particle of competent evidence in this record to sustain appellant's claim that she had contributed any money for the purchase of the property in question, the title to which was in her husband. There is therefore nothing to sustain the alleged resulting trust. That must also have been the view that appellant's counsel took of the matter when he prepared his original brief. He made no claim there that the evidence was sufficient to sustain such a trust. He, however, insisted that the premises in question constituted the

homestead of appellant and her husband, and for that reason she could not be dispossessed either by her husband or by any one claiming under him, under section 1207. If that claim be sustained by proper evidence, we are of the opinion that the contention of appellant's counsel should prevail, even though appellant failed to prove the alleged resulting trust. Of course, if she can establish by proper evidence a resulting trust, then she should also prevail to the extent of her interest in the premises, although she failed to prove that it was a homestead, provided she can establish that the plaintiff had knowledge of the trust.

Counsel for appellant, in his supplemental brief, insists that the district court erred in entering a decree of the character it did in an action of this nature. In our judgment that contention is well founded. Neither the pleadings nor the evidence sustain such a decree.' The     3, 4
case of *Welling* v. *Abbott*, 52 Utah 240, 173 Pac. 245 (decided at this term), holds that it is not proper to quiet the title to real estate in an action of forcible entry or in an action for unlawful detainer. That such is the holding of all the courts, whether based upon a statute or on the common law, is clearly shown by an examination of the following cases: *Shoudy* v. *School District*, 32 Ill. 290; *Kepley* v. *Luke*, 106 Ill. 395; *Hunt* v. *Wilson*, 14 B. Mon. (53 Ky.) 44; *Hill* v. *Olin*, 82 Mich. 643, 46 N. W. 1038; *McCartney* v. *Alderson*, 45 Mo. 35; *Dawson* v. *Dawson*, 17 Neb. 671, 24 N. W. 339; *Worthington* v. *Woods*, 22 Neb. 230, 34 N. W. 368; *O'Donohue* v. *Holmes*, 107 Ala. 489, 18 South. 263; *Bush* v. *Coomer* (Ky.) 69 S. W. 793; *Felton* v. *Millard*, 81 Cal. 540, 21 Pac. 533, 22 Pac. 750; *Bulkley* v. *Sims*, 48 W. Va. 104, 35 S. E. 971; *Silvey* v. *Summer*, 61 Mo. 253; *Texas Land Co.* v. *Turman*, 53 Tex. 619; *Carter* v. *Newbold*, 7 How. Prac. (N. Y.) 166; *Ow* v. *Wickham*, 38 Kan. 225, 16 Pac. 335; *Boardman* v. *Thompson*, 3 Mont. 387; *Barnes* v. *Nicholson*, 2 N. J. Law, 326. In the foregoing cases the question is considered from every angle. Some of the cases are based on statutes wherein the courts are prohibited from determining the title in such actions, while in others the decisions are based upon the common law. In all the cases, whether based on statutes or not, it is, however,

held that the title may not be litigated in such actions, since they are intended to determine the right of possession merely, and the proceeding is intended to be summary.

It is, however, insisted that the parties tried the case at bar as an equitable action. Such was also the case in *Welling* v. *Abbott,* supra. Let it be assumed, however, that the parties actually stipulated to do that, which they did not, and yet the pleadings are wholly insufficient to support a decree quieting the title in either of the parties. We had assumed that the question that a decree or judgment must be supported by the pleadings, or at least by the record, had been settled, in this jurisdiction at least, in the case of *Rosenthyne* v. *Matthews-McCulloch Co.,* 51 Utah, 38, 168 Pac. 957. We are not unmindful of the contention that the parties, at least tacitly, agreed to try the case as an equitable proceeding. If that be conceded, however, it still has no effect upon what the result should be. If this case had in fact been commenced as an equitable action, yet, if the pleadings were as they now are, and hence did not sustain the judgment, the result must be the same. Moreover, under the repeated rulings of this court, neither appellant's assignments of error nor the arguments in her counsel's brief entitle her to affirmative relief. In view of the whole record, the most she is entitled to is a reversal of the judgment for the reasons stated. If she should be awarded affirmative relief on this record the plaintiff would be deprived of his day in court, for the reason, as before stated, that in reliance on the court's ruling in excluding all of appellant's testimony on the question of advancing money to her husband, respondent's counsel waived cross-examination, and, in view that appellant's complaint was admitted only to prove the pendency of the former action, he presented no evidence in opposition to appellant's evidence, but rested the case in the belief that no evidence had been produced by the appellant upon the alleged claim of ownership or the resulting trust. If the excluded evidence were now considered, and the self-serving statements of appellant in her complaint were now treated as competent evidence, the plaintiff would be prevented from presenting his side of the case.

We are of the opinion that the judgment should be, and it

accordingly is, reversed, and the cause is remanded to the district court, with directions to permit the parties to amend and recast their pleadings, and, when that is done, to hear the evidence, and to make findings of fact and conclusions of law upon the issues, and to enter judgment accordingly. The questions of both law and fact may then be determined in accordance with the rules of pleading and of evidence.

Appellant to recover costs.

CORFMAN, THURMAN, and GIDEON, JJ., concur.

McCARTY, J.

I concur in the order reversing the judgment. I am of the opinion, however, that the trial court should be directed to dismiss the action, and hence I dissent from the order directing the lower court to permit the parties to recast their pleadings and to permit plaintiff to substitute for this action another and different kind of action.

The purport of the prevailing opinion, if I correctly understand it, and the order directing the lower court to permit the pleadings to be amended, is to permit the plaintiff to convert this case, which is a law action, into an equitable action. In other words, this court in effect says to the plaintiff (whose course of conduct, and that of his coadjutors through whom he claims to deraign title to the property in question in their effort to acquire the legal title to, get possession of, and permanently dispossess and deprive Mrs. Atkinson of her home, is more in harmony with that of the buccaneers and freebooters of the middle ages than it is with modern equitable principles and rules of procedure). "You have been unable in a legal action to deprive this woman, who is worse than widowed, of her home because of certain statutory impediments. Amend your complaint and convert the action into an equitable one, and the courts may, by the application of equitable rules, legalize the illegal methods by which you acquired your claim of title." This ought not to be. The record in this case shows conclusively that Mrs. Atkinson is the only person connected with, or interested in, this litigation who has come into court

with "clean hands," and she is the only party who, while demanding equity, is offering "to do equity." Equity, according to my understanding of the doctrine, enables courts to do *justice* in cases where a party is entitled to relief and the application of the strict rules of law is inadequate. In all cases, however, he "who comes into a court of equity must come with clean hands"; and in no case can equity be properly invoked to enforce a claim that has its inception in fraud or wrongdoing. The record in this case, as I shall point out, shows a state of facts that make it impossible for plaintiff to show "clean hands." His own testimony and admissions, considered in connection with other facts and circumstances in evidence, clearly show that he is not entitled to the relief he is seeking.

To correctly reflect and fully illustrate the equities of this case it will be necessary to review, somewhat in detail, certain facts and circumstances long antedating the particular transactions upon which plaintiff relies to support the judgment of the trial court, which is in his favor.

The record shows that on March 25, 1881, Mary Atkinson and William J. Atkinson intermarried in Partick, by Glasgow, Scotland. Some time prior to 1907 they came to this country, and located at Bridgeport, Conn., where Mrs. Atkinson for a considerable length of time worked in a silk factory. She also worked in a silk factory in Paterson, N. J. During the time she worked in these places she saved and deposited in a bank over $1,600. She testified that she turned that money over to her husband, William J. Atkinson, with the understanding that he would come to Utah and purchase a home, and that in pursuance of this arrangement Atkinson came to this city and purchased the property involved in this action. Soon after Atkinson came to this state his wife went to Seattle, Wash., and from there she returned to Bridgeport, Conn. In the meantime Mrs. Atkinson wrote to her husband and he was otherwise advised of her whereabouts. On the 14th day of August, 1909, William J. Atkinson commenced an action in the district court of Salt Lake County against his wife for a divorce. The purported service of summons was had by publication. Atkinson in his affidavit for

publication of summons made oath "that the last-known ad-
dress of defendant was Cleveland, Ohio." The record shows
that this part of the affidavit was false, and that Atkinson at
the time he subscribed to it knew it to be false. On October
22, 1909, judgment by default was entered, whereby Atkin-
son was granted an interlocutory decree of divorce, which
decree was made final on April 23, 1910. On or about Sep-
tember, 1911, Mrs. Atkinson came to Salt Lake City; and not
having been advised of the divorce proceedings, and believ-
ing that she was still the wife of William J. Atkinson, went
to their home, the property in question, where she and At-
kinson lived together as husband and wife until some time in
November, 1911, when she, for the first time, learned that
Atkinson had obtained a divorce. On learning of the divorce,
Mrs. Atkinson ceased living with Atkinson and temporarily
left the home and lived elsewhere. On November 25, 1911,
she commenced an action in the district court of Salt Lake
County to set aside the decree of divorce on the ground that
it was obtained by fraud. Atkinson answered. A trial was
had. The record in that case, which was admitted without
objection in this case, shows conclusively that certain charges
of a criminal character made by Atkinson against his wife in
his complaint for a divorce were not only groundless, but
were wickedly false. On June 26, 1912, the court made a
formal order setting aside and vacating the decree of divorce,
and on July 10, 1912, findings of fact were made and filed
and a decree entered thereon. The cause was appealed to, and
the judgment affirmed by, this court. *Atkinson* v. *Atkinson,*
43 Utah, 53, 134 Pac. 595, 47 L. R. A. (N. S.) 499. Im-
mediately after the opinion of this court was filed (July 8,
1913), Mrs. Atkinson took actual possession of the property
and has since occupied it as her home. The record shows that
it is the only home she has. Three days after the decree was
made vacating and setting aside the decree of divorce (June
29, 1912) Atkinson made and executed a mortgage, covering
the property in question, to his attorney C. S. Patterson for
$500. Patterson was Atkinson's attorney in the divorce suit
and also represented him in the suit brought to set aside the
decree of divorce. On the day the mortgage was given Atkin-

son made and executed a deed to the premises to Stewart McLeese. The deed was drawn by Patterson, the mortgagee, and was acknowledged before him as notary public. Patterson assigned the mortgage to Mrs. V. D. Patterson, his wife. On July 8, 1913, Patterson, acting as attorney for his wife, commenced an action against W. J. Atkinson to foreclose the mortgage. Stewart McLeese and his wife were made defendants in the action. Mrs. Mary Atkinson was not made a party to the suit nor did she appear in the action. Mrs. V. D. Patterson obtained a judgment for the foreclosure of the mortgage and for $100 attorney fees. On August 14, 1913, the property was sold at sheriff's sale under and in pursuance of the judgment of foreclosure, and the plaintiff therein, Mrs. V. D. Patterson, purchased the same for the amount of the mortgage indebtedness and costs, including $100 as attorney fees. A certificate of sale was issued to her by the sheriff. This she assigned to the plaintiff in the case at bar, who, in due time, received a sheriff's deed to the property. A short time before the property was sold to satisfy the mortgage plaintiff obtained a deed to the property from Stewart McLeese.

Plaintiff testified that Atkinson and McLeese "were members of the same society—an old country society"; that he had met McLeese but once before the execution of the deed; that as consideration for the deed he paid Atkinson $100 cash and agreed to assume the mortgage indebtedness. "Q. Have you the deed in your possession? A. No; I don't know who has it; I think Mr. Atkinson took it to be recorded, and I don't think I got it back. * * * I paid but little attention to it after this lawsuit started" (referring to another suit brought by Mrs. Atkinson to quiet title to the property). Plaintiff, however, does not claim to deraign title through this deed, nor does he claim that it is in any sense a link in his alleged chain of title. It is manifest from the record that the transactions involving the property to which McLeese was a party were not made in good faith, and that the consideration, if any, was inadequate.

Plaintiff further testified that before purchasing the sheriff's certificate of sale he consulted C. S. Patterson in re-

gard to the title to the property, and at the time the certificate was assigned to him he employed C. S. Patterson—paid him a retainer—to represent and defend him in any suit that might thereafter be instituted involving the validity of his. alleged title to the property. This is a circumstance tending to show that he must have had some information regarding the interest Mrs. Atkinson claimed to have in the property. Furthermore, he purchased the property, which the record shows is of the probable value of $2,500, for about $660, the amount of the judgment and costs. This includes $100 allowed Patterson as an attorney's fee in the foreclosure proceedings brought in the name of his wife, but in which he was, in fact, the real party in interest. This is the inevitable, the only, conclusion that can reasonably be drawn from the record when considered in its entirety. The record also shows that plaintiff, some considerable time before he purchased the sheriff's certificate of sale, was personally served with a copy of a complaint in an action brought by Mrs. Atkinson against him, the Pattersons, McLeese, and W. J. Atkinson, to set aside the judgment of foreclosure and to cancel the deed from McLeese to plaintiff. It is alleged in that complaint, which was admitted in evidence in this case without objection, that Mrs. Atkinson, at Bridgeport, Conn., gave Atkinson, for her use and benefit, $1,600; that Atkinson came to Utah, and with the money purchased the property in question. It is also alleged in that complaint—

"that on the 14th day of November, 1914, at the time of the commencement of said action to set aside said decree for divorce, the said plaintiff, Mary Atkinson, filed and had recorded a lis pendens, and at the same time and place made her declaration of homestead on the premises above described in the manner provided by law, which lis pendens and declaration of homestead was duly recorded in the office of the county recorder of Salt Lake County, Utah, the county in which said premises is situate, and which was thereafter duly recorded in book '2—D' of Declarations, at page 358."

· The plaintiff in giving his testimony in the case at bar admitted that he received a copy of the complaint containing the foregoing allegations. He also admitted that Mrs. Atkin-

son, on two occasions before he purchased the sheriff's certificate of sale, talked with him in regard to the trouble she was having with Mr. Atkinson. And Mrs. Atkinson testified that in the conversation referred to she informed plaintiff of her interest in the property. The trial court, however, struck out Mrs. Atkinson's testimony on this point. The court held, as shown by the record, that Patterson, the legal adviser of the parties to the several transactions mentioned involving the property in question, was a bona fide mortgagee, and hence any notice that plaintiff may have had of the claim made by Mrs. Atkinson to the property was immaterial and could not in any sense affect his title. It is also alleged in the complaint last referred to that Mrs. Atkinson—

"offered to redeem said premises from the said purchaser (Mrs. V. D. Patterson) within six months after the sale under the foreclosure of said mortgage, by paying the purchaser the amount of her purchase in the kind of money or currency specified in the judgment, with interest at the rate of 6 per cent. thereon in addition, together with the amount of any assessment or tax the purchaser may have paid thereon after purchase and interest on such amount at the rate of 8 per cent. per annum from the date of sale, * * * and now brings into court the said sum of money for which said premises were sold, * * * together with any assessment or tax which the purchaser may have paid thereon after the purchase, and interest on such sums."

It is also alleged that a like tender was timely made by Mrs. Atkinson to the sheriff of Salt Lake County on behalf of the purchaser. She, for some reason not disclosed by the record, was not permitted to redeem the property from the foreclosure sale. The refusal to permit Mrs. Atkinson to redeem the property is important, when considered in connection with the other facts and circumstances referred to, as it tends to show that Atkinson, Mrs. V. D. Patterson, and McB. Thomson, plaintiff herein, were, under the advice of C. S. Patterson, determined to employ, under the guise of law, every means at their command to dispossess Mrs. Atkinson of her home and deprive her of her interest therein, regardless of the unconscionableness of the methods adopted. And as here-

inafter pointed out, plaintiff is here asking for the application of equitable principles to quiet the title, thus acquired, to the whole of the property.

The record shows the improvements on the premises in question consists of a house of four rooms; that Mrs. Atkinson, at the time the action was commenced and when the judgment appealed from was rendered, occupied—lived in—two of the rooms and rented the others to one Charles Reynolds, who, with his family, occupied the same as his residence.

On March 7, 1914, Matthew McB. Thomson, plaintiff herein, commenced this action in the justice of the peace court of Salt Lake precinct against Reynolds for unlawful detainer. In the complaint it is alleged that plaintiff is the owner of the premises, and "that at the time the plaintiff became the owner by purchase of said premises the defendant was occupying the same without right, title, or interest therein, being a trespasser upon said premises, and not having paid any rent therefor." Plaintiff prayed "judgment for the restitution of the premises and for damages."

Reynolds filed an answer in which he denied the allegations of ownership in the complaint and other allegations therein contained on which plaintiff relied for a recovery; and he affirmatively alleged, among other things,

"that at all times in said complaint mentioned one Mary Atkinson was, and now is, the owner of the premises named and described in said complaint, and that at all times in said complaint mentioned the said Mary Atkinson was, and now is, in the quiet, peaceable, and exclusive possession of the said premises and the whole thereof, and that this defendant is a sub-tenant under a lease from the said Mary Atkinson."

It was also alleged in the answer that, by reason of Mary Atkinson's ownership of the property, she "is a necessary and proper party to the action."

The case was certified by the justice's court to the district court of Salt Lake County.

When the cause came on for trial in the district court Mrs. Atkinson was permitted to intervene, and it was stipulated and agreed between the parties in open court that the answer filed by Reynolds in the case should be treated and considered

as Mrs. Atkinson's answer also. The court, and the respective parties to the action, considered and treated it as one to quiet title and it was tried on that theory.

The court made findings of fact in favor of Matthews McB. Thomson on all of the issues. As conclusions of law the court found:

(1) "That the plaintiff McB. Thomson is the owner of the premises described * * * and the whole thereof, and is entitled to a decree quieting his title thereto, and to a writ of possession of said premises."

(2) "That the defendant Charles Reynolds has no interest or title to the said premises, or any part thereof, and no right whatever to the possession of the same, or any part thereof."

(3) "That the defendant Mary Atkinson has a one-third interest in the premises contingent on the death of the said William Atkinson if she still remain his wife and survive him; that she has no present right of possession in or to said premises, or any part thereof."

A decree in harmony with, and predicated on, the findings of fact and conclusions of law was duly entered.

The errors assigned, on which the cause was first argued in this court, are:

(1) "The court erred in overruling the demurrer to the complaint."

(2) "The decision is against law."

(3) "The decision is contrary to the evidence."

(4) "The evidence is insufficient to justify the decision."

As stated in the prevailing opinion, on the first hearing of the case before this court, "the members who then constituted this court being unable to agree, a rehearing of the case was ordered." No agreement was then reached because an opinion was prepared and submitted that affirmed the judgment of the trial court, thereby permanently dispossessing and depriving Mrs. Atkinson of her home. Of course, under these circumstances, a disagreement in this court as it was "then constituted" was inevitable. An amended assignment of errors was printed in connection with a supplemental brief; that is, the assignment of errors and the supplemental brief were printed in one document and in this form was

filed with the clerk.    Respondent's motion · to strike the
amended assignment of errors was also printed with a reply
brief, and in that form presented to and filed by the clerk.
The most that can be urged against this method of presenting
an assignment of errors is that it is an irregularity.   This
court has repeatedly ignored and overlooked irregularities of
this character by counsel in perfecting appeals far more
serious than the one here complained of.    This, however, is
beside the question.   The amended assignment was not strick-
en, and hence the alleged errors therein set forth are before
this court for consideration.   Furthermore, it is not, nor can
it be, made to appear that plaintiff is in any sense prejudiced
by this so-called irregularity.    It is alleged in the amended
assignment of errors that the evidence is insufficient to justify
the decision, and that the decision is contrary to the evidence
and against law, because the uncontradicted evidence shows:
(1) That. appellant's money bought the place, and that the
title was taken in the name of her husband, and that he gave
the mortgage to Patterson to defraud her; (2) that she did not
sign the mortgage and was not a party to the foreclosure;
(3) that she lived upon the property with her husband until
she learned that he had secured a divorce by making false
affidavits; (4) that she has no other home, and that her hus-
band has not provided her with any home; (5) that Patter-
son was attorney for her husband (in the actions mentioned
in the foregoing statement of facts) and had personal knowl-
edge of the facts before taking the mortgage; (6) that res-
pondent was informed of the facts and had full knowledge of
the facts before he purchased the property or secured the as-
signment of the sheriff's certificate of sale; (7) that the
record shows fraud of the worst kind, and that all of the
alleged transfers, mortgage, and the purchase thereof, were
with intent to defraud appellant.

The trial court ruled the case, as shown by the record,
solely on the theory that Atkinson gave the mortgage and
Patterson accepted it in good faith, and that it was given for
a valuable consideration.

The record, when considered in its entirety, does not sup-
port or justify the conclusions.arrived at by the trial court.
On the contrary, the several transactions referred to, involv-

ing the property and the circumstances leading up to and surrounding them, in the opinio.,  .    .  w .ter, point with unerring certainty to the fact that Patterson must have known when he obtained the mortgage that Mrs. Atkinson claimed an interest in the property and that he had notice of the nature and character of the interest claimed by her.  He represented Atkinson, as his attorney, in the suit for divorce in which Atkinson, as shown by the undisputed facts, made false, scurrilous, and wicked charges against his wife in his complaint, and made oath to a false affidavit, on the strength of which a pretended service of summons by publication was had, for which Atkinson could, and should, have been prosecuted in a criminal action and sent to the state prison.  He was also attorney for Atkinson in the suit brought to set aside the decree of divorce, and hence was fully advised of the criminality of his client in making oath to an affidavit which his client knew to be false, and of his perfidy in defaming and degrading his wife by false allegations contained in the complaint for divorce.  And it is manifest from the record that the appeal from the judgment rendered in the suit to set aside the decree of divorce was taken for delay only, and to thereby enable Atkinson to incumber the property in question before Mrs. Atkinson would probably commence an action against him for divorce and seek to prevent him from disposing of or incumbering the home.  The mortgage was executed immediately after the court made the order setting aside and vacating the divorce.  If, as claimed by respondent, Patterson had no notice of the claim made by Mrs. Atkinson to an interest in the property, and the execution of the mortgage was a bona fide transaction on his part,  the question arises, why did he assign the mortgage to his wife, and why did he deem it necessary to use McLeese as a dummy in the transactions referred to between Atkinson, McLeese, and Matthew McB. Thomson to create a chain of record title to the property running from Atkinson to the plaintiff independent of the link furnished by the sheriff's deed—a chain of title that neither he nor his client relied on at the trial to prove title?

The record, shows that after the perfidy of Atkinson was

laid bare, and the blot he had cast on the good name of his
wife, who, the record affirmatively shows, was innocent of any
wrongdoing, was removed by the court, as far as it was pos-
sible for the court so to do, by setting aside the decree of di-
vorce on the ground of fraud and false swearing on the part
of Atkinson, Patterson, with the aid of his wife, Atkinson,
McLeese, and plaintiff, finally succeeded in procuring a judg-
ment which if upheld would deprive Mrs. Atkinson of her
home. Furthermore, the only reasonable conclusion that may
be fairly deduced from the record is that Patterson had notice
of the claim made by Mrs. Atkinson to an interest in the
property. And the record further shows that plaintiff was
not, as a matter of law, an innocent purchaser. Mrs. Atkin-
son's possession was not only sufficient to put him and Patter-
son on inquiry as to her rights, but it was notice to each of
them of any right, title, interest, or claim she had in or to
the property. 2 Jones Real Property & Conv. sections 1563-
1564, and 1574; 2 Devlin on Real Estate (3d Ed.) section 760;
*Toland* v. *Corey*, 6 Utah, 392, 24 Pac. 190; *Warr* v. *Honeck*, 8
Utah, 61, 29 Pac. 1117; *Land & Livestock Co.* v. *Dixon*, 10
Utah, 334, 37 Pac. 573; *Smith* v. *Myers*, 56 Neb. 503, 76 N. W.
1084; *Niles* v. *Cooper*, 98 Minn. 39, 107 N. W. 744, 13 L. R. A.
(N. S.) 49; *Dickey* v. *Lyon*, 19 Iowa, 544; 2 Pomeroy, Eq.
Juris. (3d Ed.) sections 614 and 615; *Texas Land & Loan Co.*
v. *Blalock*, 76 Tex. 85, 13 S. W. 12. In the case last cited it is
said:

"Every person dealing with land must take notice of an actual,
open, and exclusive possession, and where this, concurring with the in-
terest in the possessor, makes it homestead, the lender stands charged
with notice of that fact."

Furthermore, the record shows that plaintiff had actual
notice of the character and extent of the interest Mrs. Atkin-
son claimed to have in the property, and that he had actual
notice that she claimed it as her homestead. He admitted,
while testifying, that he was served personally with a copy of
the complaint offered in evidence, in which it set forth Mrs.
Atkinson's claims of an interest in the property, also that she
claims it as her homestead. His evidence on this point was

not stricken. In fact, the knowledge he thus acquired of Mrs. Atkinson's claims could not be stricken. The question, is did he have notice? If he did, it matters not how or from what source he acquired it.

The important and decisive question is, who is entitled to the possession of the property, Mrs. Atkinson or Matthew McB. Thomson? It is insisted on behalf of Mrs. Atkinson that she is entitled to remain in possession under the Homestead Act, tit. 32, Comp. Laws Utah 1907. The act, so far as material here, provides (section 1148) :

"If the homestead claimant is married, the homestead may be selected from the separate property of the husband, or, with the consent of the wife, from her separate property."

The record in this case shows no declaration of homestead was made until after the property was sold at sheriff's sale under the foreclosure proceedings, but that a declaration was made, filed, and recorded before Matthew McB. Thomson purchased and had assigned to him the sheriff's certificate of sale. It is therefore urged in behalf of respondent that Mrs. Atkinson, having failed to make, file, and have recorded a declaration of homestead until after the property was sold under the foreclosure proceeding, waived her right to claim the property as a homestead.

Comp. Laws Utah 1907, section 1149, provides that:

"Any person who is the head of a family may make a declaration of homestead in the manner provided in the next two sections, but a failure to make such declaration shall not impair the homestead right."

Section 1207:

"Neither the husband nor wife can remove the other, or their children, from their homestead without the consent of the other, unless the owner of the property shall, in good faith, provide another homestead suitable to the condition in life of the family."

It will be observed that under the foregoing provisions of the statute the failure to file a declaration of homestead as therein provided "shall not impair the homestead right." Mrs. Atkinson therefore did not waive her right to occupy the property in question as her home by failing to file a declara-

tion of homestead. Her husband, even if he were the sole owner, could not, under section 1207, legally remove her from the property without first providing her another homestead. Atkinson, therefore, could not, by transferring the legal title without his wife's concurrence, confer upon the grantee any greater dominion over the property than he himself possessed.

For the reasons herein stated I am clearly of the opinion that the case should be reversed, with directions to the lower court to vacate and set aside the findings of fact and decree heretofore made and entered, and to dismiss the action.