# WARD v. WARD.

No. 5960. Decided August 11, 1938. (85 P. 2d 635.)

Rehearing Denied December 19, 1938.

*D. N. Straup,* of Salt Lake City, and *B. H. Jones,* of Brigham, for appellant.

*Thatcher & Young,* of Ogden, for respondent.

MOFFAT, Justice.

The plaintiff and respondent filed an original complaint in two counts. The first count is an action in the usual form to quiet title; the second count is in unlawful detainer or ejectment. The defendant and appellant filed an answer denying the allegations in both causes of action and as affirmative defenses and counterclaims set out in six counts matters of family history and ownership of the property in question before the death of defendant's father, conveyance to his mother, the execution of a so-called irrevocable will, his occupation and use of the home and farm lands in question at Willard City, Box Elder County, Utah, for a period of about 12 or 13 years, with some oral understanding between himself and his mother as to the terms and conditions upon which defendant proceeded.

The first question raised by appellant arises out of the filing of an amended complaint in the nature of an answer to the counterclaim and to conform with the proof. The ground upon which the ruling of the court is assailed is that the amended pleading constitutes a departure from the original complaint.

Pursuant to the allegations of the six counterclaims, among other things, defendant asked for specific performance of the alleged contract or will (to be discussed later) or, if specific performance were unavailing, he asked for a reasonable value for his services with an equitable lien upon the property. Plaintiff filed a reply alleging facts which she claimed sufficient to defeat defendant's asserted right to specific performance. Amendments were made and stipulations agreed to as the trial proceeded. During the introduction of the evidence, at a time when defendant had asked leave to amend, counsel for plaintiff stated at the time defendant amended his pleadings, that counsel for plaintiff desired that if it appeared necessary to amend later that

such permission would be granted; that at that time it was agreed to. The record bears out the alleged understanding.

When the cause came on for argument the court indicated some doubt as to whether the relief asked for in the nature of rescission could be granted under the pleadings. Amendment was proposed and permitted. Appellant complains of this ruling on the ground of departure as indicated. We think appellant is not in position to urge the point successfully. In appellant's first affirmative defense and counterclaim, it is alleged "that the said plaintiff, by demanding the immediate possession of said premises and the institution of this action, has elected to rescind said partly executed family agreement." Equitable defenses are pleaded.

The trial court proceeded with the trial and both parties offered evidence in support of and in opposition to the issues as so accepted and presented without objection. In fact, all the matter relating to the whole situation was aired to the court and the court so considered the proposition. The appellant does not nor could he ∎ well contend that he was prejudiced, surprised or otherwise put to any disadvantage. The battle ground was of his own choosing. Whether the amendment was necessary may be doubted. The plaintiff was put in the position of pleading the pertinent facts by way of reply to defendant's counterclaim. In addition to that, the evidence was all before the court. *Skola* v. *Merrill,* 91 Utah 253, 64 P. 2d 185; *Straw* v. *Temple,* 48 Utah 258, 159 P. 44. In any event, defendant was not prejudiced, the whole matter being before the court as it was, it was proper for the court to dispose of the issues presented under the circumstances. *Utah Lead Co.* v. *Piute County,* 92 Utah 1, 65 P. 2d 1190.

The facts in the Utah Lead Case just cited are different from the instant case, but where an action is brought and equitable defenses and counterclaims are pleaded and the issues are tried as thus formed, although "technically, an

allegation in a reply is to make issue with an answer or counterclaim and cannot initiate in whole or in part a cause of action" [page 1194] when the issues thus formed are tried there seems no way reasonably to dispose of the matter except for the court to completely dispose of the issues where there is no surprise, prejudice or error affecting substantial rights. Appellant's claim to an interest in the property in question arises, if at all, out of the terms of the will made at his request, if not actual dictation, by his mother, the respondent, now deceased, and for whom her personal representative has been substituted. The will, its provisions, the operation of the farm under an oral agreement, the alleged changed conditions, compensation and other items were injected by defendant in his answer and counterclaims. After the preliminary provisions and paragraphs of the will, the following provisions are found therein:

"IV. This will is made immediately after the death of my beloved husband, Joseph W. Ward, and in view of the fact that it is my desire, as well as the desire of my family, that my son J. H. Ward shall have all real estate, including the home, together with all personal property such as farm implements, machinery, cattle and horses, and all other personal property used in connection with said farm upon my death, and it being the desire of all of the family that he shall immediately return to Willard and take over the farm and manage the same for me during my lifetime and shall pay to the girls, or their issue, upon my death, a definite sum of money hereinafter set forth, which said sum has been agreed upon by all members of the family and is considered by all to be just and equitable in the premises.

"Now therefore, in consideration of my son J. H. Ward's return to Willard to operate the farm for me during my lifetime, I hereby give, devise and bequeath to my son J. H. Ward all of my real estate of which I may die possessed, as well as all personal property used in connection therewith, for the management of said farm, being everything excepting household goods, which will be hereinafter disposed of; provided however, that my son J. H. Ward shall pay to each of my daughters, Eliza E. Dial, Hazel Budge, Ada Dern and Eva Nelson, or to their issue, if either of said daughters are deceased, the sum of One Thousand Dollars ($1,000.00), which said payments shall be made to each at the rate of One Hundred Twenty-five Dollars ($125.00) per

year to each daughter, and there shall be no interest on said deferred payments until maturity. If the payments are not made at maturity, then thereafter they shall draw interest at the rate of eight per cent per annum; provided, however, that my son J. H. Ward shall have the right to pay as much more, or all of the same at any shorter time that he may so desire.

"It is my intention and desire that the above bequest to my said son J. H. Ward shall be dependent upon his payment of the above sums to each of my daughters in the manner and form aforesaid and each of my daughters shall be given a lien upon said real estate for the amount she is entitled to, and in the event of the failure of my son to make said payments, then and in that event each of my daughters, or their heirs, shall have the right to foreclose their lien to the extent of their interest in said property.

"Should my son J. H. Ward desire not to accept the provisions under this will, then it is my desire that upon my death all of my property shall be divided equally between my children or their issue, in the event of the death of any of my said children. In the event of the death of my son J. H. Ward before me, then and in that event I desire that his issue shall take, under the terms of this will, the same as though he were still alive, and shall be governed by the same provisions hereinbefore made.

"V. In view of the fact that this will is being made in consideration of my son's caring for said property during my lifetime, I hereby declare this will to be and the same is irrevocable."

There is no other written document relating to the matter. All of the other evidence lies in parol. After hearing the evidence, the trial court construed and treated the will as an option contract, and determined: That the document gave the defendant (the son) no present interest in the property nor any by reason of the management thereof; that, under the oral agreement, he had been fully paid for service rendered; that, at most, it could not be more than an option for purchase after the death of the mother; and that, although by declaration nonrevocable, there was nothing binding upon the son, since, having assumed no obligation to exercise the alleged option, he could terminate his management arrangement at will.

Appellant submits a number of cases and argues that there was created an irrevocable trust. The cases sub-

mitted support the conclusions reached in each of the cases in finding a trust. Most of them were based upon either a conveyance constituting a part of the res or a continuing service not otherwise compensated for, sometimes associated with possession or part performance sufficient to take the cases out of the statute of frauds. As indicated in appellant's brief, the case of *Torgerson* v. *Hauge,* 34 N. D. 646, 159 N. W. 6, 3 A. L. R. 164, is in many respects similar in its facts to the instant case. In that case Torgerson entered into an oral agreement with his parents to the effect that he should reside with and care for them during their lives and at their deaths he should receive their property. They executed and delivered to him their joint will constituting him their sole devisee. Torgerson lived with and cared for his parents until his death. His wife and children and administrator offered to continue to care for and support and maintain them as previously. Other family influence persuaded the parents to make a new will. This was contested by the wife and children of Torgerson. It was held there that a will executed under such an agreement was both testamentary and contractual and could not be revoked without the consent of the beneficiaries. Many of the cases relating to such contractual wills or trusts so created or resulting therefrom are cited and considered. Most of such cases depend upon the facts of each case.

It will be observed that defendant (the son) in the instant case was to "take over the farm and manage the same for" his mother during her lifetime, and then to pay the other members of the family a specified sum. The evidence discloses that the son and mother entered into an oral agreement after the will was made whereby the farm was to be operated upon a share basis. He did not operate it for his mother. He operated it for himself as any other tenant, lessee, or share-cropper would.

We have carefully read the record and are of the opinion that the findings made by the court are supported by the

evidence, and, considering the opportunity the trial court had of observing the witnesses, their attitudes, candor or want of it, and the presence of the parties, in determining the weight in matters of apparent conflict, it cannot be said that the findings are not supported by a preponderance of the evidence. The evidence is fairly summarized in the court's findings: The court found that at the time of the filing of the action, plaintiff was and still is the owner and entitled to the possession of the described property; that the defendant had no claim nor interest therein; and, we quote:

"4. The court further finds that Joseph W. Ward, husband of plaintiff and father of defendant, and plaintiff's immediate predecessor in interest to the premises herein described, died on or about the 4th day of May, 1922; that defendant is the only son of plaintiff and, while plaintiff was overcome by grief and in a highly nervous condition and easily imposed upon, defendant solicited plaintiff to permit him to remove his family from Idaho and return to Willard and operate the farm; that defendant stated that he, being the only son, considered it his right to purchase all of plaintiff's property upon her death; that, because of the relationship which existed between plaintiff and defendant, plaintiff imposed the greatest confidence in the defendant, and, believing defendant would deal justly with plaintiff, if she would make some kind of provision for defendant to acquire said property after her death, plaintiff permitted defendant to consult an attorney with respect to the preparation of a will; that thereafter defendant did consult an attorney and requested the attorney to prepare a will for plaintiff; that thereupon and at the request of defendant the said attorney drew a document purporting to be the last will and testament of plaintiff; that each and all of the provisions contained therein were dictated by defendant and not by plaintiff; that after the said will was prepared, defendant brought plaintiff to the office of said attorney and the said instrument was then read to plaintiff and thereupon plaintiff signed the will; that a copy thereof is attached to plaintiff's amended complaint, marked Exhibit 'A', and is by reference made a part of these findings; that immediately upon the execution of said will same was delivered to the defendant who ever since said time had had the exclusive possession thereof; that defendant has refused to permit plaintiff to see said will since that time and that plaintiff has never seen said document or any copy thereof until the same was introduced by defendant as an exhibit during the trial of this action.

"5. That thereafter, during the month of September, 1922, defendant moved his family from Idaho into a portion of plaintiff's home; that up to this time no definite arrangements had been made between plaintiff and defendant with respect to the operation of said farm and that shortly thereafter defendant and plaintiff orally agreed that defendant might rent said farm during plaintiff's lifetime upon the following terms, to-wit:

"That each would pay one-half (½) the cost of planting said land; one-half (½) of the taxes and one-half (½) of the cost of any extra labor if someone outside the family had to be occasionally hired and that they would divide the balance of said crops or the proceeds thereof one-third (⅓) to plaintiff and two-thirds (⅔) to the defendant; that pursuant to said oral lease, the defendant went into possession of the farm in the spring of 1923; that at the time defendant solicited plaintiff to permit him to return to Willard and purchase said property upon the death of his mother and also at the time of making of said oral lease and as a part of their general understanding and agreement, defendant covenanted and agreed that he would devote all his time, as well as the time and attention of his family, to the proper operation of said farm; that he would cultivate said premises in a good and husbandlike manner, keep all buildings and implements in a good state of repair; that he would plant portions of said lands to orchards and otherwise improve said farm with a view of making it highly productive; that he would harvest said crop in the proper season and would not hire any help except occasionally when he and members of his family were unable to keep up with the work.

"Defendant further agreed that he would at all times be a dutiful and loving son; that he and his family would move into a portion of plaintiff's home and that they would make life agreeable to plaintiff during her declining years and that they would bestow upon plaintiff that degree of affection that she had a right to assume would be bestowed upon her by her only son and his family.

"6. That relying upon said promises, plaintiff executed said will and later permitted defendant and his family to move into said home and thereafter entered into an oral lease as aforesaid. The court further finds that the defendant failed to devote his time to farming said premises but, on the contrary, he has accepted employment elsewhere; that while he has spent some time in the early mornings and evenings, before and after his regular work, in the management and over-seeing of said farm, that the major portion of the work has been performed by his boys of immature age; that defendant has failed to keep up the buildings, fences and improvements upon said premises. The court, however, finds that defendant, with the assistance of his boys, has farmed said premises in a reasonably efficient manner and that they

have produced upon said property crops commensurate in value with those produced by other people in that vicinity. The court further finds, however, that, during the last few years plaintiff and defendant have had frequent difficulties growing out of the attempt by the plaintiff and defendant and his family to live in one home; that, while the court does not attempt to place the responsibility on either side, yet the court recognizes the utter impossibility of plaintiff and defendant and his family to continue to live in one home; that said difficulties have lead to a family estrangement and, as a result thereof, defendant and his family do not treat the plaintiff .with the consideration that one might expect; that plaintiff has become ill in body and highly nervous and that it is impossible for the plaintiff and the defendant and his family to live any longer in the same house.

"The court further finds that the defendant has failed to divide the crops or the proceeds thereof in accordance with the terms and provisions of said oral lease; that the defendant has a large family and that, before dividing said crops, he has used a large amount of the produce grown or produced upon said farm, such as butter, milk, eggs, vegetables, fruits, etc., and has divided only what is left instead of giving plaintiff one-third ($\frac{1}{3}$) of the net proceeds after deducting only cost of said taxes and extra labor; that plaintiff has pleaded with defendant to change his course of conduct and to live up to his agreement but the defendant has shown a disposition to be inattentive, cold in his attitude and somewhat disrespectful in his treatment of plaintiff; that during the winter of 1935-6 the defendant would go for weeks without speaking and finally, on the 20th day of March, 1936, plaintiff served a written notice upon defendant demanding that he surrender possession of said premises but, notwithstanding such demand, defendant refused to vacate said premises or to move out of said home and he has continued to reside therein and to farm said premises during the season of 1936 and that he has now harvested all crops grown or produced upon said premises during the season of 1936. The court further finds that the said agreement permitting defendant to occupy said home and rent said premises is void and unenforcible because said agreement is not in writing as required by the provisions of Chapter 5, title 33 of the Revised Statutes of Utah, 1933, Sections 33-5-1 to 33-5-4. The court further finds that the said will, if treated as a contract, does not give the defendant a present interest in the property by reason of his management and control thereof during the lifetime of his mother but that there is a condition precedent to his acquiring an interest in the property as provided in the last paragraph of page 2 of said will which provides for the payment to his sisters of one thousand dollars ($1,000) each in annual installments and the last paragraph of paragraph 4 of the will makes it

optional with the defendant as to whether or not, even though he may have managed the farm to the date of the death of his mother, he elects to purchase said property from his sisters. Because of these facts, the court is of the opinion that it was not contemplated by the parties that defendant should acquire anything more than the right to purchase the property at the fixed price without interest if he managed it for his mother but that the will did not give to the defendant any present interest in said property."

The foregoing findings fairly reflect the preponderance of the evidence.

Under some circumstances, a will may constitute a contract that may be irrevocable; under other circumstances it may constitute a contract only, and a breach thereof might be measured in damages; or in other cases the will is revocable, ambulatory and may be amended or changed to meet the mind of the maker at any time. When the will is sought to be maintained also as a contract, there must be sufficient to satisfy the statute of frauds if the will itself does not do so. In the instant case, at the time of the commencement of the action and during the trial, plaintiff was alive and there appears nothing in the record which negatives her right to the property. The will recites that it is the desire of the mother that her son shall have the property after her death upon complying with the conditions in the will. Under the terms of the will, it was in consideration of his operating the farm "for his mother" during her lifetime that he was to have the privilege of purchasing it after her death. This he did not do. The will did not provide for the son to move into the property or to rent it during the mother's lifetime, nor to receive any of the rents, issues or profits therefrom. The operation of the farm, the occupation of it and terms under which it was to be operated, cultivated or used were separate from anything in the will. The court took the view that the defendant had been paid for all the services he had rendered. We cannot say the court was in error in so finding and concluding. *Andrews* v. *Aikens*, 44 Idaho 797, 260

P. 423, 69 A. L. R. 8. There is nothing in the oral contract or in the will itself as to the operation of the farm requiring appellant to render aid or assistance in case of sickness, or to remain upon the farm, which he did not do. There is nothing appearing in the record that could warrant the conclusion that, even had he done so, the service could not be compensated for. Ordinarily equitable relief in the form of specific performance of a contract-will, such as is presented herein to devise or bequeath property, will not be allowed unless the contract is clear and the evidence convincing. The legal remedy would furnish adequate relief. *Zellner* v. *Wassman,* 184 Cal. 80, 193 P. 84.

It is generally held that such contracts will be closely scrutinized and strictly construed. The situation as revealed by the will itself leaves some doubt as to what the son was to do. To operate the farm for his mother during her lifetime, does not appear sufficiently to specify his duties. True, an alleged oral agreement was aired out by testimony, which, nevertheless, included differences as to understanding of its various terms. In order to entitle a party to specific relief, it must be made to appear that the contract is in all respects fair, just and reasonable, and that the compensations are mutual. It must be attended with all of the attributes of fairness and honesty as will appeal to the conscience of the chancellor. The terms may not be pieced out of oral testimony, often uncertain and contradictory. The court, sitting as a chancellor, had the opportunity of measuring all of these factors; and, since it decided against the defendant's claims, we may not disturb its findings and judgment in the premises. *Kurtz* v. *De Johnson,* 42 Cal. App. 221, 183 P. 588; *Halloran-Judge Trust Co.* v. *Heath,* 70 Utah 124, 258 P. 342, 64 A. L. R. 368.

The defendant signed nothing, agreed to nothing, unless certain recitals in the will itself were binding upon him— which they do not appear to be. Plaintiff could not compel the defendant to perform anything pursuant to the terms of the will alone, and he might terminate the lease or abandon

the whole situation at his pleasure. The oral agreements or understandings as to the occupation and use of the property were made after the will, and seem to have been fully compensated for. He could move off at any time, or even refuse to go forward with the purchase option provided for in the will after the death of his mother.

A careful examination of the record convinces us that the trial court correctly disposed of the matter. Finding no error, the judgment is affirmed, respondent to recover costs.

FOLLAND, Chief Justice (concurring). I concur in the affirmance of the judgment of the District Court of Box Elder County for the reasons stated in the opinion of Mr. Justice MOFFAT and in the concurring opinion of Mr. Justice WOLFE.

WOLFE, Justice (concurring).

I concur. I think, however, that it is not clear on what theory the lower court arrived at its judgment. While the decision affirms the judgment, I do not think that some of the questions raised by the appeal are sufficiently delineated to ascertain just what legal propositions we lay down in the decision.

The original complaint was to quiet title and for ejectment. The answer introduced the will which it claimed was in effect a contract. The reply set up that if a contract, it was broken by defendant. A complaint to quiet title ofttimes merely sets off the litigation. The issues which grow out of it as developed by the pleadings may present purely legal, purely equitable, or a mixture of legal and equitable issues. Whether an action to quiet title is, therefore, a legal or an equitable action depends largely on what sort of issues are raised in the action. In this case, before the amendment asking rescission (which amendment was made after the case was submitted and memorandum decision handed down), the pleadings raised only legal issues. The defendant set up a contract to prevent his ejectment. The plaintiff claimed breach of contract as a means of avoiding the

effect of the will. The court evidently did not go so far as to declare the will a nullity, that is, rescind the contract, but in finding that there was a breach by defendant which permitted plaintiff to avoid the effect of the contract, it in effect amounted to such declaration as far as defendant was concerned. Yet the judgment of the court does not go any further than is required by the legal issues. Judgment of ejectment in an action of ejectment is a judgment rendered by a law court, although it has the quality of an equitable remedy. In consequence of what has been above said, I do not see that the judgment is one founded on the amended complaint for rescission, but on the issues as originally framed. Even if conceived of as being founded on and responsive to the amended complaint which is in equity and thus brings to this court the duty to weigh the evidence, I do not think we can say that the evidence below preponderates against the conclusion of the court there reached. Even in equity cases we do not reverse where after reading the record we have doubt as to what conclusion of fact should be reached. We then adhere to the lower court's conclusion. I think the court might have reached the conclusion that the contract by Hyrum Ward was substantially performed, that any infractions were minor, that the mother had by her conduct in permitting Hyrum's family after a number of years to take from the produce raised food for his family before division of the net proceeds, acquiesced in the same or put such interpretation on their contract. But I cannot say that the conclusion to the contrary is not equally or more tenable. Consequently, even though we consider this an equitable action. I do not think the court's findings in those regards can be disturbed. I shall at the end of this opinion have a word to contribute regarding defendant's assertion that the amendment to the complaint constituted a departure. But as above intimated, I think the amendment in view of the decree was needless.

The effect of Mr. Justice Moffat's decision is to hold that the defendant has committed such breach as to permit the

plaintiff to revoke. However, the court found—and was not required to go further in its findings—that the contract had been violated and by reason of the violations the plaintiff could terminate the same and eject the defendant. It did not require the equitable action of rescission to accomplish that. There being a substantial breach, the plaintiff could herself revoke and treat defendant as an interloper on the land. The lower court was correct in holding that. However, I believe the matter should be clarified for the benefit of the litigants and to avoid another lawsuit. The ambiguity of the findings of the trial court should not be carried into this court's opinion. This court should decide how much of the findings of the court below is supportable. If the opinion is left vague in this regard, we still leave unsettled the questions of whether the "irrevocable will" is still in force, and whether the defendant is entitled thereunder to the property subject to the terms therein stated. The mother (plaintiff) is now deceased and that question becomes important. The court's opinion decides that the amended complaint was properly received and that plaintiff should have possession. But between these two questions are five additional questions. Not to consider these would be like arriving at an answer in a mathematical problem without revealing the successive steps leading to that answer.

The findings of fact, paragraph 5 (found in the main opinion), set out the terms of an oral agreement made subsequent to defendant's coming into plaintiff's home—terms not mentioned in the will. While defendant assigns as error the finding of the court that there was an oral agreement and the terms of it, I think the evidence sufficient to support said finding. The difficult question is as to the relationship between the oral agreement and the will. The five questions may be posed as follows:

(1) Is the so-called "irrevocable will" anything more than a contract? (2) Should the oral agreement be considered a part of the written contract-will or a separate agreement? (3) Is the oral agreement as to terms of the tenancy

within the statute of frauds and therefore not specifically enforcible? (4) Is there such a breach of the oral agreement, or depending on the answer to question No. (2), oral part of the agreement, as prevents specific performance in behalf of defendant? (5) Has there been a breach of the contract-will which permits revocation?

(1) Is the so-called "irrevocable will" anything more than a contract? The plaintiff agreed to do certain things in consideration of defendant's moving to Willard and caring for and operating the farm. The fact that defendant could terminate the arrangement at will did not prevent the contract's being valid. By this failure it became what is called an unilateral contract, i. e., the promisor is bound if the other party performs his part of the agreement. Williston on Contracts, (Rev. Ed.) Secs. 13, 60, 60A, 61. Such an arrangement constitutes a valid contract enforcible by the party who renders the optional performance. Williston, Sec. 1441; 25 R. C. L. 235, Sec. 37; 1 Ann. Cas. 991, note; 118 Am. St. Rep. 592, note.

But this is no more than a contract to leave property at death if the prospective devisee will perform certain conditions. Performance of the conditions gives rise to a right of action for specific performance or damages. *Thomas v. Johnson,* 55 Utah 424, 186 P. 437; *Roy v. Pos,* 183 Cal. 359, 191 P. 542; *Aldrich v. Aldrich,* 287 Ill. 213, 122 N. E. 472; *Colby v. Street,* 151 Minn. 25, 185 N. W. 954; *Woodworth v. Porter,* 224 Mich. 470, 194 N. W. 1015; *Woods v. Dunn,* 81 Or. 457, 159 P. 1158; Williston on Contracts, Sec. 1421. Failure to perform makes the arrangement ineffective. The devisor is not bound and is free to make other disposition of the property.

Counsel for defendant contends that the will creates an irrevocable trust. The plaintiff contends that it gave only an option to buy at plaintiff's death and then subject to payment of specified amounts to the sisters. By the terms of the will itself no irrevocable trust is created. The plaintiff did

not constitute herself as a trustee. What defendant apparently means is that the will together with defendant's compliance with his part of the bargain gave defendant a right to require the court to impose a trust on the property out of the declarations of the will. Thus, the property, held in trust by such judicial decree, would put it out of reach of plaintiff to alienate and thus deprive defendant of the benefits of his bargain if he performed his end. This is a species of specific performance and of course the trust would have to depend on the continued performance by defendant of his part of the contract. But whether it is conceived that the will gives a right to go before a court and have a trust imposed on the property or whether it grants an option to buy at the time of plaintiff's death, irrevocable as long as defendant performs, primarily depends on whether defendant has performed the contract. This leads us directly into the question of what was the contract.

(2) Was the oral agreement a part of the written contract-will or was it a separate agreement? If it is not decided whether there were two contracts or one, the defendant will be free to contend that the decision of this case ousts him from possession under the oral agreement only; that the will refers only to management and operation; that he has never violated the precedent conditions of the will; that he has always been ready and willing to perform and remains so, but was prevented from performing by the plaintiff herein and the plaintiff's breach cannot be charged to defendant; and that, therefore, the option under the will is still alive and he elects to exercise it. For this reason I think the question should be decided. Furthermore, if the agreements are separate, the discussions about the two should be separate because one has been breached and the other is too vague to be enforcible. Indeed, if the two are separate, only the oral agreement is pertinent to the action for possession since by that the defendant claims the right of occupancy. I think it was one contract. The oral agreement filled in the detail of the written contract-will. This was apparent by the un-

derstanding of the parties and implicit in the findings and conclusions of the trial court.

The memorandum opinion of the trial court states in part as follows:

"Furthermore, it appears from the evidence, that the relationship of the party [sic] have become so unbearable to each that it would be extremely inequitable to compel the plaintiff to carry on the relationship as it has heretofore existed, merely for the sake of affording to her son an option for the purchasing of the property at her death."

Carrying on this relationship was a part of the oral agreement, and yet the trial court evidently understood that disrupting the oral agreement would disrupt the option, in other words, that the contract-will would not stand if the oral agreement were knocked out. That this was the view of the trial court is made more certain from a consideration of Finding of Fact No. 5, first paragraph, also second paragraph reading:

"* * * at the time of the making of said oral lease and as a part of their general understanding and agreement. * * *"

This court would only be carrying out the intentions of the parties and the understanding of the trial court if it treated the oral agreement and the written will as one contract.

(3) Is the oral part of the agreement as to the terms of tenancy within the statute of frauds and therefore not specifically enforcible? The defendant-appellant in his answer alleged the agreement entitling him to possession. Respondent set up the statute of frauds as making the oral portions of the agreement unenforcible and also offered proof of breach of those provisions. It might be unnecessary to decide the statute of frauds question if it be decided that there was a breach of the oral provisions which would none the less prevent enforcement.

The will recites: "* * * in consideration of my son J. H. Ward's return to Willard to operate the farm for me during my lifetime * * *", and further: "In view of the fact that

this will is being made in consideration of my son's caring for said property during my lifetime. * * *" The oral agreement covered relationships over the same period and was therefore for the lifetime of the plaintiff. An agreement to lease during the lifetime of the lessor is not within the statute of frauds since the lessor may die in less than a year and the agreement be wholly performed and terminated. *Johnson* v. *Johnson,* 31 Utah 408, 88 P. 230; *Betts* v. *Betts,* Tex. Civ. App., 220 S. W. 575; *See* v. *See,* Mo. Sup., 237 S. W. 795. The rule is the same as where there is a promise to make payments during the payor's life, or keep someone for life. *Moon* v. *Gilliam,* 187 Ark. 581, 61 S. W. 2d 64; *Fidelity Union Trust Co.* v. *Reeves,* 96 N. J. Eq. 490, 125 A. 582, affirmed 98 N. J. Eq. 412, 129 A. 922; *Dixon* v. *Lamson,* 242 Mass. 129, 136 N. E. 346.

The contrary finding of the trial court in Finding of Fact No. 6 was erroneous but immaterial because of our decision that there was a breach of the contract.

Appellant cites cases where part performance made enforcible agreements to devise property which would otherwise have been void. If there had been no will in the case at bar, those cases would be applicable, but here, all the testamentary provisions of any agreements between these parties were in the written will. And the agreements in so far as they related to tenancy and possession were not within the statute of frauds because of the possibility of performance within a year.

(4) Was there such a breach of the oral part of the agreement as prevents specific performance in behalf of defendant? In Finding of Fact No. 6 the trial court found as breaches of the occupancy agreement that the defendant and his family had not treated the plaintiff with the required respect and that he had failed to divide the crops as agreed to. There is evidence to support these findings. A party cannot have specific performance of the agreement he has failed to perform. *Cummings* v. *Nielson,* 46 Utah 294, 150 P. 295; *Galluchat* v. *Pittman,* D. C., 288 F. 917, 925, affirmed with-

out opinion 4 Cir., 288 F. 928; *Woodard* v. *Stowell*, Mo. Sup., 222 S. W. 815; *Ball* v. *Brooks, Sup.*, 173 N. Y. S. 746; *Roy* v. *Pos*, supra; *Mitchell* v. *White*, 295 Ill. 135, 128 N. E. 803; *Enkema* v. *McIntyre*, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411.

(5) Has there been a breach of the contract-will which has made it revocable and in fact revoked it if there be a subsequent will? The answer to this question has been indicated. If the oral and written agreements are in reality one, failure of performance as to the oral agreement is a substantial breach and failure of performance as to the whole. Plaintiff would then be free to treat the contract as broken and therefore terminated.

Calling a will "irrevocable" does not make it so. *Bates* v. *Hacking*, 29 R. I. 1, 68 A. 622, 14 L. R. A., N. S., 937; 1 Jarman on Wills, Sec. Ed., p. 30; 1 Page on Wills, (2d Ed.) p. 105; 69 A. L. R. 208; 3 A. L. R. 172; 28 R. C. L. 168. If based on a contract it is irrevocable without a breach of contract for which specific performance might lie so long, and only so long, as the person to whom the property is to go lives up to his part of the agreement. *Andrews* v. *Aikens*, 44 Idaho 797, 260 P. 423, 69 A. L. R. 8, 57-67, 109-115, and cases there cited.

The appellant contends that there was a departure. If the oral understanding and the contract-will are considered as two separate contracts the defendant might have a more tenable argument because it might then be contended that the amended complaint filed after the evidence was in, set up a new cause of action in that it set out the making of the will and asked to have it revoked whilst in the original complaint ejectment only was asked. But at all events, *Stevens & Wallis* v. *Golden Porphyry Mines Co.*, 81 Utah 414, 18 P. 2d 903, must be conclusive of this question. The writer questions the correctness of that opinion. But if it is the law certainly the change made in the amended complaint in this case was far less drastic and definitely not a change in the cause of action as compared to the variance in the

Porphyry Mines Company Case. In the latter case the plaintiff alleged a contract between itself and defendant. The proof showed no such contract had ever been made between them but that defendant had contracted with one Meldrum for the latter to carry on a sales campaign. The latter was to cause a prospectus to be printed. He, and not the defendant, contracted with the plaintiff for the printing of the prospectus. The defendant owed Meldrum money for his services; Meldrum owed plaintiff money for printing. Meldrum gave plaintiff an order on defendant for money owing him, Meldrum. Defendant accepted the order. It was held that this proof, showing no contract for printing between plaintiff and defendant but acceptance by defendant of an order on it by Meldrum to pay plaintiff, supported the allegations of the complaint that there was a contract for printing between plaintiff and defendant. Certainly, if probata followed allegata in the Porphyry Mines Company Case so as not to work a variance, a fortiori, in this case there is no departure.

For the reasons outlined in this opinion, I concur.

HANSON, Justice (dissenting).

The trial court erred in permitting the complaint to be amended after the trial, introducing a new and different cause of action. The original complaint alleged, in count 1, plaintiff's title to the farm and defendant's wrongful adverse claim thereto; and in count 2, plaintiff's title and right of possession and defendant's wrongful detention thereof, with damages. Prayers to recover possession and quiet the title follow. During argument, after the evidence was in, the court intimated doubt as to whether relief could be granted under the issues. Thereupon plaintiff asked, and over defendant's objection was given, leave to amend her first count "to meet plaintiff's proof in this case." Two months later and after the court had handed down its memorandum decision in plaintiff's favor, the latter filed an amended complaint in which both counts of the original

complaint were amended by interpolating several lengthy paragraphs. Much of this new matter was contained in plaintiff's reply to the defendant's answer to the original complaint. However, it is not the legal function of either a reply or an amended complaint to introduce a new cause of action or a new ground of recovery. The proper function of a reply is to raise an issue on the averments of the answer or counterclaim; that of an amendment, to perfect what is already imperfectly or defectively stated in the original pleading.

The defendant by his answer pleaded (1) the general issue, and (2) an admission and justification of his adverse claim and right of possession of the farm under an agreement with plaintiff dated May 11, 1922, a copy of which was attached to and made part of the complaint. The writing purports on its face to be both the last will and testament of the plaintiff and a request or proposal, such as would become a contract upon acceptance and compliance therewith by defendant. It recites the personal and family desire of plaintiff and her four daughters that defendant (then residing in Idaho with his family) should return to, manage, and operate the farm for plaintiff during her life, and by the testamentary provisions of the writing, bequeathing to him upon her death the farm itself and all the personal property and farm tools and equipment thereon, and other property, subject to a charge thereon of $1,000 in favor of each of her four daughters, payable $125 per annum to each daughter until fully paid without interest until maturity of the payments. He further alleged his possession under and compliance with the terms of said agreement by management and operation of the farm for plaintiff for 13 or 14 years, and insisted upon his right to continue so doing. This was a sufficient plea in confession and avoidance of the charge of his claiming and detention of the farm without right as alleged in the complaint.

By his counterclaim he repeated these averments and prayed sundry measures of alternative relief addressed to

the discretion of the court, viz.: (a) Specific performance of the contract, (b) reformation thereof, (c) relief by way of estoppel, (d) a trust in the realty, (e) reimbursement for labor and outlays to be secured by an equitable lien on the premises, and (f) equitable ownership coupled with right of possession.

The reply admits execution of some such writing, the specific provisions of which plaintiff does not remember, and hence denies it until produced at the trial. By her reply plaintiff further alleges a subsequent and supplementary oral agreement with defendant made after, or shortly before, he took possession of the farm and began to manage and operate it in the spring of 1923, whereby defendant agreed to do sundry things, as alleged, and breaches whereof are set forth in the reply. As so alleged, the supplementary oral agreement is not inconsistent with the previous writing under which defendant was to manage and operate the farm for plaintiff. Nor, as so alleged, does the oral agreement provide for any defeasance of the prior written agreement in case defendant should fail to comply with its terms or with the oral agreement in any detail or particular. It appears to have been a mere working agreement to supply details not before anticipated or provided for in the writing. The reply closes with a prayer for judgment "as prayed for in her complaint"; that is, for ouster from possession with damages, and quieting of plaintiff's title.

Neither the written agreement nor the later oral agreement were alleged in the original complaint, nor was there the slightest reference thereto. The writing first appeared in defendant's answer and counterclaim as the justification for his possession and claiming, asserted in the complaint to be without right. The oral agreement was first alleged or noticed in plaintiff's reply to the answer. Without inquiring into its sufficiency as a defense or reply to the counterclaim at this time, our first concern should be as to whether the amended complaint, repeating the same or similar matters, can be admitted to introduce a new cause of action or

grounds for new and distinctive relief not permissible under the complaint as it stood until the close of the trial and for two months afterward. The issues and permissible relief at the trial, under the complaint, were limited to just two things, viz.: Whether defendant was in unlawful possession and whether he was unjustly claiming an interest adverse to the plaintiff. There was no possible basis, under the complaint at the trial, for relief by way of rescission of a contract with defendant. If not, can such a cause of action be grafted on and the issues and grounds of relief enlarged by amendment at or after the trial? To ask this question is to answer it. The reason of the rule of law which forbids such shifting of the settled issues in a case is constitutional in its implications, designed to prevent mischief and injustice. A defendant, having been summoned and come prepared to defend one set of issues, is suddenly confronted with a new and different set of issues of fact and law. The spirit and substance of his right to a hearing is thereby violated. And where this occurs, as here, after the trial, dismissal of witnesses, and actual decision by the court upon the trial issues, the mischief is increased and the right to defend is wholly denied. No court has the right to go beyond the issues tried in making its formal findings and entering judgment. *Thomson* v. *Reynolds,* 53 Utah 437, 174 P. 164, 167; *Rosenthyne* v. *Matthews-McCulloch Co.,* 51 Utah 38, 168 P. 957; *Oldroyd* v. *McCrea, Judge,* 65 Utah 142, 235 P. 580, 40 A. L. R. 230. If a party can allege one cause of action and recover upon another his pleading can serve no useful purpose but rather will mislead and ensnare his adversary. 9 C. J. 639, 640; *Christensen* v. *Duborg,* 38 Nev. 404, 150 P. 306, 308. And whereas an amendment changing from an express contract to an implied contract violates this rule (*Fillmore City* v. *Fillmore Roller Mill Co.,* 36 Utah 339, 103 P. 967; 3 Cyc. 414, at note 26), so also must an amendment to enforce or rescind a contract where no contract at all or relief from any contract was pleaded or sought in the original complaint as here. The original complaint was in tort for

wrongful detention of land and damages, in one county, and to quiet title against wrongful claiming in the other.

The following cases further illustrate the rule forbidding substitution under guise of amendments. Contract of sale changed to rescission of the contract (*Givens* v. *Wheeler*, 6 Colo. 149). Suit to establish a trust changed to claim land as community property (*Peiser* v. *Griffin*, 125 Cal. 9, 57 P. 690). Suit to void a deed for undue influence changed to void the same deed for nondelivery (*Carter* v. *Dilley*, 167 Mo. 564, 67 S. W. 232). Reformation of a deed changed to cancellation of the same deed (*Foxwell* v. *Justice*, 191 Ky. 749, 231 S. W. 509). Willful tort to same acts negligently done (*Proctor* v. *Southern Ry.*, 64 S. C. 491, 42 S. E. 427). Shares sold to shares exchanged (*Kramer* v. *Gille*, C. C., 140 F. 682). Negligence in retaining a careless servant to negligence of the same servant (*Union Pac. R. Co.* v. *Wyler*, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983). In each of these cases there was some resemblance between fact and counterpart. Here there is none.

It has been held that an amendment stating a new cause of action, filed over timely objection, results in a dismissal of the complaint and does not put the defendant into court upon the substituted cause of action. *Nelson* v. *Hays*, 75 Iowa 671, 37 N. W. 177; *Oglesby* v. *Attrill*, C. C., 14 F. 214; *Bergen Township* v. *Nelson County*, 33 N. D. 247, 156 N. W. 559; *Groom* v. *Bangs*, 153 Cal. 456, 96 P. 503; *Graziani* v. *Ernst*, 169 Ky. 751, 185 S. W. 99.

The injustice against which our cited cases contend is increased by allowing the amendment after trial and decision without further evidence or trial, and by findings and judgment upon the substituted cause of action. The old complaint contained no trace of the new one, was functus officio when the trial ended, and no longer a basis for amendment.

The stated ground for amendment was to make the first count conform to plaintiff's proofs. What proofs? Her only proofs in opening had been an abstract of title and two other writings to show her record title to the farm. Her rebuttal

evidence was in law restricted to meeting the defense evidence, not to chart an excursion into new fields after the trial.

It is suggested that defendant waived his right to object because in his answer he said that the plaintiff, by demanding possession and by suing to recover possession, had rescinded the written contract pleaded in the answer but not in the complaint. The law does not attach any such consequence to the fact of demand and suit for possession,—not at least unless the defendant elect to treat it as such, acquiesce therein, and voluntarily deliver up the possession which he has by the contract. The defendant did not do this. Quite the contrary. By other averments immediately associated with that mentioned he insisted that he himself has fully performed the contract which plaintiff seeks to destroy; that he is willing and intends to continue to perform it; and he insists upon his right to stay in possession in order that he may so continue to perform. Where one of two contracting parties has performed or is performing, there is no such thing as rescission by the other without his consent. 66 C. J. 746, Sec. 315, citing *Bloech* v. *Highland Homes Co.*, 128 Or. 292, 274 P. 318. Even a mere option contract, such as plaintiff claims the present one to be, is binding after it has been accepted and substantially performed by defendant, and cannot thereafter be revoked or rescinded by plaintiff. 66 C. J. 746, 747, Sec. 317. Even an outright refusal to pay or perform coupled with an offer to perform according to the purchaser's mistaken understanding of its terms would not entitle the vendor to rescind. 66 C. J. 755, Sec. 331.

*Amendment insufficient.* If we could lawfully overlook the error of permitting the amendment to be filed at all, we ought surely to exact compliance with the rule of law that sufficient facts must be stated therein to constitute a cause of action and to support the judgment based upon it. This it did not do. To state a cause of action for rescission of a contract the pleading must not only allege the contract itself in haec verba or in substance, but the facts relied upon

for rescinding it. If there was fraud, duress, overreaching or breach of trust in obtaining plaintiff's signature or assent to the contract, those matters must be stated so that an issue may be taken. If the ground of rescission is that defendant has wholly failed to pay or perform the consideration, those facts must be stated and in some cases an offer to do equity must be made. In any case, the plaintiff must act promptly to rescind and give notice. For he is not bound to rescind. He may choose to hold the contract and exact performance or compensation in damages and recover the profits, if any. So he must choose. He cannot hesitate, temporize or experiment, nor wait to see if the contract or transaction will be profitable, and if not, denounce it and disclaim liability. Obligation and liability go with the reception of benefits.

These familiar principles of the law of rescission are exemplified under a variety of circumstances in the text of 66 Corpus Juris at pages 767-770, 779-784, Secs. 356-358, 372, 373, 375, 376, 378-380, 383, with supporting decisions in the footnotes. And the essentials of a good complaint for rescission are stated in Sec. 400 at pages 791, 792 of the same text. We need not cumulate citations to so plain a proposition.

The substituted cause of action here before us lacks in nearly every essential to a cause of action for rescission and the trial court erred in basing any decree upon it.

*The proofs.* The plaintiff's proofs are also incurably weak and insufficient to support rescission or any other judgment for the plaintiff. With respect to rescission the complaint does say something about the contract and will having been prepared and executed by plaintiff soon after her husband's death, and at a time when she was ill and in grief, but it does not allege that any advantage of her condition was taken by the defendant in inducing her to sign it or that it does not truly express the desires and intentions of plaintiff at the time. The evidence is, and the contract states upon its face, that it was executed at her request, and that of her family "without duress, menace, fraud, or undue influence

of any person whatsoever." The writing was prepared by able and experienced counsel after full consultation with both parties, acting for and in the interest of both. He would hardly have inserted the quoted words if he had not believed them to be true and a proper safeguard against any future contention to the contrary. That same counsel still believes them to be true, or he would have alleged something to the contrary in the complaint or the amended complaint that he prepared and filed for her in this case. And if there were any evidence to the contrary, known to either plaintiff or her counsel, they would have produced that evidence at the trial. No such evidence was produced.

On the contrary, the uncontradicted testimony from both sides of the case shows that at and prior to the date of the contract the defendant was residing with his family in Idaho, where he had profitable employment. And that, in response to the earnest request of his mother and sisters as contained in the written contract and will, and otherwise, he disposed of his home in Idaho, surrendered his employment, and removed to his mother's farm in Box Elder County, Utah, and took up his residence there and his duties under the contract. They shared the dwelling house. He began and continued for some thirteen years to manage and operate the farm for her. It was a small 16-acre farm, and insufficient in yield to support their joint establishment but for his own labor at times independently in a neighboring establishment at wages. With this help he supported his family and his mother. During the greater portion of this time, the plaintiff never discovered anything gravely wrong with the contract or with the defendant's performance under it. She never pretended that it was improperly obtained or that it did not accurately reflect her wishes and intention at that time. She contentedly entered into the arrangements contemplated thereby, shared the home with her son and his family, and accepted his services, labor, efforts and support during many years without objection or claim that there was anything wrong with the contract or its provisions. It was only dur-

ing the last few years that her objections began to be made and to multiply. The trivial nature of some of these complaints tends to discount the remainder. But she had already accepted and enjoyed far too many benefits under the contract and profited by too many sacrifices on the part of her son to entitle her to rescind and repudiate it even if she had ever had that right. Furthermore, her complaints and objections do not take hold of any provision in the written contract and will. They relate specifically to the terms of an alleged oral agreement between them, made long after the written contract, about the provisions of which the parties disagree. Whatever its provisions or their dealings under it, it did not by its terms purport to vacate or annul the previous written contract and will under and by which defendant was entitled to possession and was to manage and operate the place for his mother, the plaintiff. Neither party claims that it did. On the contrary both agreements could operate concurrently and the parties lived together peaceably under both agreements during many years. Because the plaintiff now contends that defendant did not live up to every detail and item of the later oral agreement, or her version of it, this cannot now impair or destroy the perfectly valid prior written agreement containing within it her testamentary disposition of the property. That is because the will was also a contract with defendant with substantial performance under it to his credit.

With that understood and disposed of, I now turn for a moment to the asserted oral agreement. There are some thirteen distinct provisions in it, numbered "a" to "m," inclusive, in the reply and amended complaint, and asserted breaches of them. For brevity these may be condensed into a few simpler classifications, viz.: (a) Failure to farm the place properly; (b) failure to devote his entire time to it; (c) neglect to repair; (d) inadequate accounting; (e) failure to water the lawn and flowers; (f) allowing chickens to run loose; (g) deficient showing of love, respect and attention.

These derelictions, if true, fully proved, and provided against in the written agreement, as they were not, would not warrant rescission so long as plaintiff continued to receive and enjoy the fruits of the contract and the benefits of defendant's operation and management during so many years. To properly estimate these benefits it will be recalled that defendant is and was plaintiff's only son and reliance upon the death of the husband and father. Plaintiff was then in advancing years and her strength was insufficient to the burdens of operating the ranch. Her four daughters were then married, living with their husbands, and could not be depended upon for assistance. The mother and daughters joined in the request to the son and brother to return to the ranch and operate and manage it for the mother. The written contract and will so recites on its face. In order to comply he had to sell or dispose of his home and give up his employment in Idaho at $135 a month, and return to and eke out a living for himself, his family and his mother on the small ranch, coupled with such near-by employment as he could get at times to supplement the slender revenues from the ranch. It is perfectly manifest that the plaintiff by the contract obtained from her son in services and support, management, and operation of the farm, that which she was apparently unable to provide for herself in any other way. Yet we discover in her pleadings and proofs neither ability, offer or tender of reimbursement for his sacrifices and outlays in her behalf. Granting that he had his living from the produce of the farm, which he divided with her, it was not the farm alone that yielded the living. It required his labor and that of his boys and his wife, his management, his separate earnings at times, to supplement what the farm yielded for their mutual support.

It is one of the tragedies of life that such differences as this record presents should have been allowed to creep in, grow and develop among those between whom we should expect the friendliest and most affectionate relations, until their whole lives become embittered and open hostility re-

sults. Just whose fault this was or which side was more in fault by the test of patience, forbearance and mutual cross-bearing, it is not the function of this court to determine. Nor is the evidence adequate to the undertaking. Each side accuses the other. It is more than probable that, as often happens, both sides have a share in the blame; that they were each partly deficient in those arts of kindly patience and self-sacrifice that might have cut short these asperities and sweetened their associations with each other. Lacking these, no art, no human remedy, no court is competent to justly apportion the blame or to avert the bitter consequences. It is possible that certain near relatives of the parties may by their over-zealous attitude have a share in the responsibility. All the courts can do is to determine the property rights of the parties by the test of the applicable rules of law and equity, and leave the personal relations of the parties where they find them.

The written contract required the defendant to manage and operate the farm for the plaintiff during her life and to pay the four daughters $1,000 each after her death, in consideration of which the property should become his. This obligation to manage and operate during her life cannot be strained to include all the big and little asserted breaches of the later oral agreement between them as to the provisions of which the parties disagree. Plaintiff claims that by the oral agreement she was to have one-half the net produce of the ranch after certain expenses were paid. Defendant asserts that her share was to be one-third, and that he made that division with her. Plaintiff contends that she did not always get her share. They likewise disagree as to other provisions of the oral agreement and as to the claimed breaches thereof.

In the view we take we need not determine the merits of the opposing contentions about the oral agreement. They do not go to the merits under the complaint and answer. These are restricted to the right of possession and asserted wrongful detention of the premises. Without rightful possession

by defendant there could be no division of the crops. To show lawful possession defendant pleaded and produced in evidence the written contract and will executed by plaintiff under which he entered upon and operated the farm. Defendant in her testimony admitted its execution and delivery. She thereby admitted defendant's justification and disproved wrongful detention. As well may she have delivered a deed of conveyance and then 13 years later sued in ejectment to recover possession and quiet title upon a claim that the grantee had breached some subsequent oral agreement between them. Her grant and delivery of possession under this written agreement were equally absolute and unconditional. And her contract to pass title upon completion of payment of the price was equally absolute.

If it was her theory that she could by a suit in court break the will entirely by alleging and proving a substantially complete breach thereof by defendant, a complete failure of the consideration, she could not do so by ignoring its existence in her complaint and suing at law for unlawful detention of the premises. On the contrary, she must in her complaint set up the contract, plead it in haec verba or in substance, and set out specifically the facts relied upon as defeating it. She must tender an issue as to the extraneous matters giving rise to her equities, and go to trial on them. She cannot ignore a prima facie valid contract granting the right of possession any more than she can a prima facie valid deed conveying the title, or a judgment or other instrument, good upon its face, and assail them collaterally when produced by her opponent.

Equally might a plaintiff sue in ejectment for land and when a good title by deed and abstract of title is produced in defense, contend that facts exist which in equity create a resulting trust, or an express trust by which defendant holds the title in plaintiff's favor, or for his use, and get a judgment ousting defendant from the possession.

If plaintiff has a later oral contract with defendant for a division of the net yield of the place, for repairs, for his

entire time, for care of the lawn and flowers or for herding of the chickens, it would seem that her remedy is by action on the contract for its breach or for an accounting, or for waste,—not an action to put him off the premises.

The trial court erred in entering judgment quieting plaintiff's title and for recovery of possession of the premises and in adjudging that defendant has no right, title, estate, or interest therein, or right of possession thereof, and enjoining him off the place.

It is my opinion that the defendant, by the written contract and will, duly accepted by him and performed to date, has an equitable estate or interest in all the property embraced in the contract in that behalf, with the right of possession thereunder, and with the right to complete his purchase by paying his sisters $4,000 after plaintiff's death in the manner stipulated thereby. In quality it is not unlike that of any purchaser of real estate whose vendor dies pending purchase, with the right to complete payment and receive title thereafter in probate by decree of distribution or administrator's deed under R. S. Utah 1933, Secs. 102-11-26 to 102-11-28. It is also like that which a locator acquires in public mineral lands by his location under the statute, discovery of mineral, and performance of labor required by law. He is entitled to complete his purchase by paying $5 per acre and receive the patent.

This is true although in any such case the purchaser or locator is not obliged to complete his purchase, but may abandon it if he will; yet he is not obliged to do so. He cannot be compelled to forego his rights. The courts may not coerce him or compel him to be satisfied with less than the full fruits of his contract.

Space forbids discussion of the many cases cited by respondent's counsel. They are not in point as I view them. *Andrews* v. *Aikens,* 44 Idaho 797, 260 P. 423, 69 A. L. R. 8, is nearest in point. It supports my position that a will pursuant to a contract supported by a consideration may not be revoked or rescinded without consent of the beneficiary.

The further holding therein on the special facts of that case that the purchaser may be compensated in money rather than by specific performance, is not a just criterion for decision in this case where the conditions and services are very different. Plaintiff here has made no offer to so compensate and lacks the ability to make defendant whole.

The plaintiff's plea of the statute of frauds must be overruled in my opinion. The written contract and will is duly signed by plaintiff and witnessed. This is sufficient to satisfy the statute. If defendant's signature were necessary (which it is not), yet his performance takes the case out of the statute. 27 C. J. 343, Sec. 427. This rule applies in actions for equitable relief such as rescission and cancellation, injunction, quieting title, etc. 27 C. J. 348, notes 45 to 59, and cases.

While the record on appeal does not disclose the fact of plaintiff's recent death, yet a certified copy of special letters of administration filed here on February 17, 1938, denotes that one Ezra Nebeker was on February 10, 1938, appointed by the probate court as special administrator of her estate. From this, I conclude that the present controversy is at an end in so far as the duty of further personal service by defendant to earn title is concerned. But his right of possession continues along with his right to complete his purchase by paying the stipulated cash to his sisters.

LARSON, Justice (dissenting).

I concur in the views expressed by Mr. Justice Hanson in his dissenting opinion.